United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 27, 2004**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

———————————————

No. 03-60801

———————————————

MIKE ROBINSON, MARK YODER, JERRY KING,
HERBERT JONES, JAMES SMITH, LEE SCOTT HERRON,
KEITH FLETCHER, DIANA SMITH, DARRYL HASSAN
and TED DUPIN,

Plaintiffs - Appellants,

versus

GUARANTEE TRUST LIFE INSURANCE
COMPANY; DOE DEFENDANTS A - Z,

Defendants - Appellees.

————————————————————————————————————————————

Appeal from United States District Court
for the Northern District of Mississippi

————————————————————————————————————————————

Before SMITH, WIENER and PICKERING, Circuit Judges.

PICKERING, Circuit Judge.

FACTS AND PROCEEDINGS BELOW

Plaintiffs were selling agents for Commonwealth National Life Insurance Company

("Commonwealth") when Commonwealth entered into an Assumption Reinsurance Agreement

(the "Reinsurance Agreement") with Guarantee Trust Life Insurance Company ("GTL") on

January 1, 1996. Under the Reinsurance Agreement, GTL assumed all of Commonwealth's

medicare supplement policies in Mississippi and Commonwealth's obligation to pay continuing

commissions on existing policies to the qualifying selling agents. At the time the Reinsurance

Agreement was executed, the Appellants were plaintiffs in a state court suit in Mississippi against

Commonwealth for alleged improper practices in replacing policies in an effort to cut them out of commissions. This litigation was settled in October 1997, and memorialized in a confidential settlement agreement. GTL was not a party to that litigation or settlement; likewise, Commonwealth is not a party to this litigation. Plaintiffs exempted from the settlement with Commonweath any claims they might have against GTL or Allen Stevens, a GTL agent and former Commonwealth agent.

GTL contends that it continued to pay commissions due plaintiffs under the commission scheme that was in force at Commonwealth pursuant to a schedule supplied by Commonwealth. Plaintiffs disagreed and commenced this litigation in the Circuit Court for the Second Judicial District of Bolivar County, Mississippi, on September 29, 2000, by each filing a multi-count complaint asserting at least eighteen causes of action including entitlement to an accounting, torts arising out of contract, breach of contract, wilful breach of contract, breach of covenants of good faith and fair dealing, slander of business and commercial disparagement, conversion or civil theft, tortuous or fraudulent conspiracy, common law fraud, fraud of concealment, intentional infliction of emotional distress, twisting, tortuous interference with contractual relations, tortuous interference with prospective business advantage, misappropriation of trade secrets, violation of Mississippi's consumer protection laws/unfair and deceptive trade practices, violation of the Mississippi Uniform Trade Secrets Act and negligence.

GTL removed all of the state court cases to the district court where a joint scheduling order was entered on February 9, 2001. The district court formally consolidated the ten cases for trial on February 26, 2002. On February 28, 2002, GTL moved for summary judgment, which was granted on August 28, 2002. Plaintiffs filed a Motion for Reconsideration under Rule 59(e),

Federal Rules of Civil Procedure, which was denied on August 15, 2003. This appeal followed.

Each of the plaintiffs was appointed as a selling agent for Commonwealth at different times, from the late 1980's to the early 1990's. Commonwealth offered a range of insurance products, including medicare supplement policies, all of which these agents were authorized to sell. The agents derived their commissions from premiums paid on policies they sold which remained in force. They also derived some commissions as overrides on policies sold by subagents operating under each of them.

At some point in the early to mid-1990's, Commonwealth appointed Allen Stevens as a selling agent and provided him a list of all of its medicare supplement policyholders with the express purpose of cancelling the existing policies and converting them to new standardized medicare supplement policies. Stevens and his subagents were then receiving the commissions and overrides on the new policies to the exclusion of the agents who had sold the original (replaced) policies. This resulted in the state court litigation against Commonwealth by many of its agents, including at least nine of the ten here, which settled in October 1997.[1]

The district court found that only Paragraph 4.07 of the Reinsurance Agreement addressed the commission issue. After reviewing the Reinsurance Agreement and the evidence adduced in support of and in opposition to summary judgment, the district court concluded that "There is no evidence that GTL was obligated to pay plaintiffs commissions on inactive or replaced Commonwealth policies or on replacement policies. Further, there is no evidence that GTL was contractually restricted from offering replacement coverage to its insureds."

---

[1] Plaintiffs assert that all ten were involved in the state court litigation, but GTL asserts that only nine were. Regardless, it is not directly relevant here.

3

The district court found that subsequent to the Reinsurance Agreement, Stevens was also appointed a selling agent for GTL, and that he was encouraged to continue to contact Commonwealth policyholders in an effort to replace those policies with newer GTL policies. The court found that 561 policies were ultimately converted out of the more than 5,100 issued by Commonwealth. Some of these policies were converted by Commonwealth before the Reinsurance Agreement and some of them were converted by GTL after the Reinsurance Agreement.

POSITIONS OF THE PARTIES

Plaintiffs argue that the exception from the 1997 settlement with Commonwealth covered all claims they had against GTL for commissions on Commonwealth policies converted by Stevens while he was with Commonwealth as well as for his continued efforts after becoming an agent for GTL. Therefore, one of their claims is for commissions wrongfully paid to Stevens on the policies he (Stevens) converted prior to and after consummation of the GTL/Commonwealth Reinsurance Agreement. They also assert that they were not paid commissions by GTL after the Reinsurance Agreement in accordance with their agency contracts with Commonwealth and further that they did not receive commission increases commensurate with the premium increases on Commonwealth policies which remained in force.

Plaintiffs also contend that GTL began increasing premiums on the assumed Commonwealth policies in order to induce policyholders to replace them and began conspiring with Stevens and other unnamed Doe Defendants to continue to contact and persuade Commonwealth policyholders to replace their old Commonwealth policies with new GTL

4

policies. Further, as to the fraud and malicious interference claims, plaintiffs assert that GTL made misleading and fraudulent statements to Commonwealth policyholders and artificially deflated GTL premiums to induce the policyholders to convert to GTL policies while at the same time inflating the premiums on the Commonwealth policies. Indeed, the district court concluded that GTL did increase the premiums on the Commonwealth policies and offered new policies at lower premiums.

The district court concluded that the parties seemed to agree on the basic facts surrounding the Commonwealth/GTL contract and the replacement of policies by GTL. It therefore ruled, as a matter of law, that the facts thus established did not create liability on the part of GTL. The court ruled that there was no genuine issue of material fact on the question of whether all three of the parties agreed that GTL would replace Commonwealth as to the agency agreements entered into between Commonwealth and plaintiffs. In other words, the court held as a matter of law that there was no novation. The court noted, in a footnote, that some of plaintiffs were appointed selling agents for GTL after the assumption agreement took effect but that they did not assert any claims arising from that appointment.

STANDARD OF REVIEW

Review of the district court's grant of summary judgment is *de novo* applying the same standards as the district court. *Performance Autoplex II Ltd. v. Mid-Continent Casualty Co.,* 322 F.3d 847, 853 (5th Cir. 2003). Summary judgment should be granted only when there is "no genuine issue as to any material fact[.]" Fed. R. Civ. P. 56 (c); *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 408-09 (5th Cir. 2002). The summary judgment standard calls for the court to review

5

the evidence and the inferences to be drawn therefrom in the light most favorable to the non-moving party. *Daniels v. City of Arlington*, *Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)(*cert. denied* 534 U.S. 951 , 122 S.Ct. 347 , 151 L.Ed.2d 262).

## ISSUES AND ARGUMENTS

The district court concluded, after finding no novation and thus no contract, that GTL had breached no other duties owed to plaintiffs.  That was a rather broad sweep of the broom.  It is true that plaintiffs focused primarily on the issue that the Reinsurance Agreement was a novation of the original agency contracts between plaintiffs and Commonwealth making GTL liable for its asserted breach thereof.  Nevertheless, we conclude that not all of the complaint allegations were terminated by the finding that the Reinsurance Agreement did not operate as a novation of the original agency contracts between plaintiffs and Commonwealth.

Plaintiffs' main argument focuses on the novation issue. GTL, in its briefs, addresses each of the allegations of the original complaints.

## NOVATION

Under Mississippi law,[2] a novation may be express or implied.   An express novation is "a contract that (a) discharges immediately an existing contractual obligation, (b) creates a new contractual obligation by, (c) including as the new obligor a party who was not previously obligated." *Mississippi Motor Finance, Inc. v. Enis,* 254 Miss. 625, 181 So.2d 903, 904 (Miss.

---

[2] Mississippi law applies under the teachings of *Erie* in that the case was removed on diversity grounds. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

1966). Further, "[t]he contract of novation is a mutual understanding among all parties concerned." *Id.* A "novation may be implied where the facts and circumstances demonstrate that it was the intention of the parties to substitute one party for another." *Id.* at 905. However, an implied novation "requires substantial proof that the creditor impliedly accepted the new debtor in the place of the old and it must not appear that the creditor intended to hold both the new and old debtor for the obligation. This determination is factual and necessary to an implied novation and release of the old debtor." *First American Nat. Bank of Iuka v. Acorn, Inc.*, 361 So.2d 481, 487-88 (Miss. 1978)(*citing American Blakeslee Mfg. Co. v. Martin & Son*, 128 Miss. 302, 91 So. 6 (Miss. 1922)).

GTL notes that novation is most often used by an original obligor in an effort to avoid a contract and thus there is little precedent on the "offensive" use of novation by an obligee as urged by plaintiffs herein. Black's Law Dictionary cites the Restatement of Contracts §§423-430 for the proposition that a novation substitutes a new party and discharges one of the original parties to a contract by agreement of all three parties. The Mississippi Supreme Court cited some of the same Restatement sections in *Enis*. This same proposition is also advanced in *Ainsworth v. Lee*, 218 Miss. 813, 67 So.2d 905, 907 (Miss. 1953)(noting that a novation is generally defined as a mutual agreement among all parties concerned for the discharge of a valid existing obligation by the substitution of a new valid obligation).

As pointed out by GTL, plaintiffs were not parties to the Reinsurance Agreement between Commonwealth and GTL. The only reference in the contract pertaining to plaintiffs was the agreement by GTL to be responsible for paying the commissions due under Commonwealth policies assumed by GTL. Plaintiffs make much of the argument that they, impliedly if not

7

expressly, assented to the substitution of GTL for Commonwealth. That issue is not central to a determination of this action. Under Mississippi law, all of the requirements of a contract must be present for a novation to be effective. Plaintiffs point to no evidence produced to the district court which would support a meeting of the minds on the essential terms of the novation. There is no language in the Reinsurance Agreement nor evidence produced that would support a finding that GTL assumed the agency contracts of plaintiffs or agreed to be bound by the terms thereof, except that GTL agreed to pay whatever commissions were due on the Commonwealth policies assumed.

Indeed, as GTL points out, plaintiffs did not even produce the contract between themselves and Commonwealth that was allegedly assumed by GTL by way of the novation. Under Mississippi law, one "seeking relief for breach of a written contract must prove the existence of the contract and the right to relief thereunder." *Giesenberger v. John Hancock Distributors, Inc.*, 774 F. Supp. 1045, 1052 (S.D. Miss. 1991). Even if the district court had found a novation, it would have been impossible, on the evidence produced below, for the court to determine if a breach of the agency contract had occurred since the contract was not in evidence.

Some of the Mississippi novation cases contain language about the factual nature of a determination as to whether or not an implied novation has occurred. The district court, by granting summary judgment, found no genuine issue of material fact that supported a conclusion that a novation had occurred and, thus, impliedly found no genuine factual dispute surrounding the issue of an implied novation. Our review of the record supports this conclusion. The parties largely agreed on the facts regarding novation, and there was no material dispute surrounding

8

these basic facts. Additionally, plaintiffs do not present much of an argument for an implied novation, instead arguing that an express novation occurred by virtue of the Reinsurance Agreement. Plaintiffs address an implied novation only in passing.

At any rate, it was incumbent upon plaintiffs to produce substantial evidence from which the district court could make a determination that an implied novation had occurred. Plaintiffs produced absolutely no evidence that by executing the Reinsurance Agreement with Commonwealth, GTL intended to make plaintiffs its agents. In fact, the evidence is to the contrary. GTL entered into separate agency contracts with some of plaintiffs. Plaintiffs failed to create a genuine issue of fact as to the novation issue. We conclude that the district court correctly found that no novation had occurred, either implied or express.

THIRD PARTY BENEFICIARY

Having concluded that the district court was correct in granting the motion for summary judgment on the issue of novation does not end our inquiry. In its original brief, GTL stated that the only conceivable contractual obligation it owed to plaintiffs was to pay commissions on existing Commonwealth policies assumed under the Reinsurance Agreement. We agree, and that obligation would arise under a theory of third party beneficiary.[3]

GTL argues that plaintiffs had no viable contract claim because it was fully abiding by the commission payment provision of the Reinsurance Agreement. That argument is conclusory, is

---

[3] Failure adequately to brief an issue on appeal constitutes waiver of that argument. *See Fed. R. App. P.* 28(a)(9)(A); *United States v. Martinez*, 263 F.3d 436 (5th Cir. 2001) (noting the rule); *United States v. Thames*, 214 F.3d 608, 611 n.3 (5th Cir. 2000) (waiver for failure to include argument in statement of issue or body of brief). While argument of counsel for plaintiffs before this court on the third party beneficiary issue leaves much to be desired, GTL's counsel acknowledged that the issue is properly before us. We appreciate counsel's candor and agree that this is the only viable issue in this case.

9

hotly contested and ignores plaintiffs' evidence to the contrary.

We will now address the issue of third party beneficiary, which the trial court failed to address. Under Mississippi law, a stranger to a contract may enforce a promise made for his benefit which derives from the terms of the contract itself. *Burns v. Washington Savings*, 251 Miss. 789, 171 So.2d 322, 324-26 (Miss. 1965). In *Mississippi High School Activities Ass'n, Inc. v. Farris By and Through Farris*, 501 So.2d 393 (Miss. 1987), the Mississippi Supreme Court set forth the requirements for one claiming a third party interest as a stranger to a contract;

> (1) When the terms of the contract are expressly broad enough to include the third party either by name or as one of a specified class, and (2) the said third party was evidently within the intent of the terms so used, the said third party will be within its benefits, if (3) the promisee had, in fact, a substantial and articulate interest in the welfare of the said third party in respect to the subject of the contract.

501 So.2d at 396.

GTL argues that this claim fails as a matter of law because the Reinsurance Agreement does not require GTL to pay commissions to any particular agents, only to Commonwealth agents generally. This is disingenuous. Plaintiffs are members of the class of contemplated beneficiaries of the specific contract terms found in ¶4.07 of the Reinsurance Agreement. There is certainly, at a minimum, a factual dispute as to their status, which is all that must be shown to defeat summary judgment.

GTL next argues that it was obligated only to pay commissions on Commonwealth policies existing as of the closing date of the Reinsurance Agreement. The trial court agreed with this argument. However, that ignores the plain language of paragraph 4.07 of the Reinsurance Agreement. Paragraph 4.07 provides, in pertinent part:

> 4.07 <u>Commissions</u>. [Commonwealth] is liable for all commissions on premiums received in

10

connection with the policies prior to the Effective Date . . . . . [GTL] is liable for payment of commissions on premiums received in connection with the Policies after the Closing Date.

Under the Reinsurance Agreement, GTL clearly promised to pay to the appropriate agents whatever commissions were due "on premiums received in connection with" all policies assumed by GTL after the closing date. This contractual agreement may or may not include replacement policies. That issue was resolved in state court as to Commonwealth, for commissions due prior to the effective date, by settlement. It has not been addressed as to GTL for "commissions on premiums received in connection with the Policies after the Closing Date" under the theory of third party beneficiary.

GTL also ignores the arguments and evidence produced by plaintiffs that GTL was incorrectly paying commissions under the Commonwealth policies. The court concluded that GTL was paying commissions on the old Commonwealth policies without addressing plaintiffs' claims that they were being shorted and that such constituted a breach of the contract - whether the contract applied to them as a novation of the original Commonwealth agency contract or as third party beneficiaries of the Reinsurance Agreement.

Plaintiffs have cited to testimony that creates a factual dispute as to whether GTL was properly calculating commissions due under the policies as to which GTL admits plaintiffs were entitled to receive commissions. They cite to the deposition testimony of agents James Smith, Lee Scott Herron and Diana Smith who they allege all testified that GTL was improperly calculating their commissions and was not paying them in accordance with GTL's agreement with Commonwealth. This factual dispute goes to the heart of the issue as to whether there was a breach of the third party obligations of GTL undertaken in the Reinsurance Agreement.

11

GTL suggests that it is undisputed that it has properly paid all commissions due plaintiffs under the Commonwealth policies. That is a conclusory statement which is hotly contested. The court found simply that GTL had paid commissions on the Commonwealth policies and continued to do so. The trial court did not address that this was a hotly disputed issue as to which there are genuine issues of material fact.

It appears the district court considered that since there was no separate contractual obligation between plaintiffs and GTL as a result of its finding no novation, plaintiffs had nothing to complain about. This ignores the factual dispute as to the possible third party beneficiary status of plaintiffs as well as any claims derived thereunder. That is an issue for a factfinder to resolve.

We conclude that there are genuine issues of material fact concerning whether plaintiffs were third party beneficiaries of the Reinsurance Agreement and whether any third party obligations assumed by GTL in the Reinsurance Agreement were breached. Since plaintiffs are entitled to go forward with their third party beneficiary claims under the Reinsurance Agreement, the derivative claims such as breach of contract, fraud, negligence, and perhaps others, at this stage, survive summary judgment.

CONCLUSION

We conclude that the district court properly granted summary judgment in favor of GTL on the novation claim but erred in granting summary judgment against plaintiffs as to all issues in the face of a possible viable third party beneficiary claim and derivative claims under that theory. We, therefore, Affirm the district court's grant of summary judgment in favor of GTL on plaintiffs' novation claim and Reverse the grant of summary judgment in favor of GTL on the

12

issue of third party beneficiary, and claims derived therefrom, and Remand for further proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART, AND REMANDED.