WIENER, Circuit Judge:
The State of Texas (“the State”) appeals the decisions of the bankruptcy and district courts denying the State’s motion to dismiss the petition of Geraldine Soileau (“Soileau”) for Chapter 7 bankruptcy protection. The State’s challenge is grounded exclusively in Eleventh Amendment sovereign immunity, and the bankruptcy court and district court ruled on that ground alone. As the Supreme Court’s decisions in Central Virginia Community College v. Katz[1] and Tennessee Student Assistance Corp. v. Hood[2] establish that the discharge of a debt like Soileau’s is not barred by such immunity, the bankruptcy court had jurisdiction. We therefore affirm the denial of the State’s dismissal motion.

I. Facts and Proceedings

The facts pertinent to this case are undisputed. As a licensed bail bondsman, Soileau served as surety on bail bonds for numerous criminal defendants in Texas. Over time, fifty-five of these defendants absconded while out on bail. The State sued Soileau as those defendants’ surety and obtained state court money-judgments against her. In April 2004, Soileau filed a petition under Chapter 7 of the Bankruptcy Code, in which she sought to discharge a total of $650,897.71 in such judgments.
Two weeks later, the State moved to dismiss on sovereign immunity grounds, claiming that its refusal to consent to being made a party to the bankruptcy proceedings deprived the bankruptcy court of jurisdiction over it. Shortly thereafter, the bankruptcy court denied the State’s motion, relying on both Hood and on our pre-Hood and pre-Katz decision in Hickman v. State of Texas {In re Hickman).[3] *305 The State appealed to the district court, but it affirmed. The State then timely filed a notice of appeal to this court.
II. Analysis

A. Standard of Review

In reviewing cases originating in bankruptcy, we “perform the same function, as did the district court: Fact findings of the bankruptcy court are reviewed under a clearly erroneous standard and issues of law are reviewed de novo.”[4]

B. Eleventh Amendment Sovereign Immunity: Hood and Katz

The only issue presented by this appeal is whether, on grounds of Eleventh Amendment sovereign immunity, the State may avoid discharge of Soileau’s forfeiture judgments incurred as surety on bail bonds issued to the State in conformity with its statutory scheme.[5] Under the Eleventh Amendment, the jurisdiction of the federal courts “shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.”[6] As interpreted, however, the Eleventh Amendment is not limited to its text; the Supreme Court has “repeatedly held that an unconsenting State also is immune from suits by its own citizens.”[7] Despite this general prohibition of suits against a non-consenting or non-waiving state, “[sjtates, nonetheless, may still be bound by some judicial actions without their consent.”[8] Hood and Katz, both recent Supreme Court cases addressing sovereign immunity in the bankruptcy context, provide two such examples; and their holdings inform our analysis of the State’s claim today.
In Hood, the debtor had signed promissory notes for educational loans guaranteed by the Tennessee Student Assistance Corporation (“TSAC”), a governmental corporation created by the State to administer student loans. Early in 1999, Hood filed a Chapter 7 bankruptcy petition and was granted a general discharge that did not cover her student loans. Later that year, Hood reopened her petition, filing an adversary proceeding against, inter alia, TSAC, seeking a determination by the bankruptcy court that her student loans were dischargeable. TSAC sought dismissal on sovereign immunity grounds.[9]
The bankruptcy court concluded that Hood’s debt to the state was dischargea-ble, rejecting TSAC’s contention that the court lacked jurisdiction because of sovereign immunity. A Bankruptcy Appellate Panel (“BAP”) affirmed, as did the Sixth Circuit Court of Appeals thereafter.[10] The Supreme Court granted certiorari to determine whether the Bankruptcy Clause of *306 the Constitution[11] “grants Congress the authority to abrogate state sovereign immunity from private suits.”[12]
The Hood Court affirmed the BAP and the Court of Appeals, but did so without reaching the broader question whether 11 U.S.C. § 106(a)[13] is a valid abrogation of sovereign immunity. The Court held more narrowly that “a proceeding initiated by a debtor to determine the dischargeability of a student loan debt is not a suit against the State for purposes of the Eleventh Amendment.”[14] As the Court explained, “[t]he discharge of a debt by a bankruptcy court is ... an in rem proceeding,” as the bankruptcy court is concerned with the estate of the debtor.[15] The Court in Hood concluded that, “[a]t least when the bankruptcy court’s jurisdiction over the res is unquestioned, our cases indicate that the exercise of its in rem jurisdiction to discharge a debt does not infringe state sovereignty.”[16]
The Supreme Court went on in Hood to reject another of TSAC’s contentions, ie., that because the proceedings to challenge the dischargeability of a student loan debt were inherently adversarial,[17] the discharge of the student loan debt was an infringement on state sovereignty. In rejecting this argument, the Court ruled that, despite the adversarial nature of the proceeding, “the bankruptcy court’s jurisdiction is premised on the res, not the on the persona .... A debtor does not seek monetary damages or any affirmative relief from a State by seeking to discharge a debt; nor does he subject an unwilling State to a coercive judicial process. He seeks only a discharge of his debts.”[18] Accordingly, the Court held that, for purposes of the Eleventh Amendment, the undue-hardship determination under § 523(a)(8) of the Bankruptcy Code is not a suit against the state.[19]
In Katz, decided two years after Hood and two years after Soileau filed her Chapter 7 petition, the Court assayed to answer the question left open in Hood, viz, “whether Congress’ attempt to abrogate the states sovereign immunity in 11 U.S.C. § 106(a) is valid.”[20] Katz involved a proceeding initiated by a bankruptcy trustee under Sections 547(b) and 550(a) of the Bankruptcy Code to set aside the debtor’s pre-petition preferential transfers of funds to state agencies.[21] The State contended *307 that sovereign immunity barred the proceedings to avoid and recover the preferential transfers.[22] The Court concluded that the transfer did not offend state sovereign immunity, holding that, “[i]n ratifying the Bankruptcy Clause [of the United States Constitution], the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the in rem jurisdiction of the bankruptcy courts.”[23] Discussing the transfer involved in Katz, the Court held that “insofar as orders ancillary to the bankruptcy courts’ in rem jurisdiction, like orders directing turnover of preferential transfers, implicate States’ sovereign immunity from suit, the States agreed in the plan of the Convention not to assert that immunity.”[24]

C. Application of Hood and Katz

Applying Hood and Katz to the instant case, we conclude that the State here has no claim to sovereign immunity. Whatever uncertainty there may be as to the outer limits of the holdings of Katz and Hood, at the very least they together establish beyond cavil that an in rem bankruptcy proceeding brought merely to obtain the discharge a debt or debts by determining the rights of various creditors in a debtor’s estate&—such as is brought here&—in no way infringes the sovereignty of a state as a creditor.[25]
There can be no serious question that the proceeding at issue here is purely in rem: The bankruptcy court’s exercise of jurisdiction is focused only on Soileau’s estate. Katz describes three crucial facets of the exercise of in rem jurisdiction that prevent it from interfering with state sovereign immunity: (1) exercise of jurisdiction over the estate of the debtor, (2) equitable distribution of the estate’s prop *308 erty among creditors, and (3) discharge.[26] In this case, the State challenges the in rem discharge of a debt, a specie of imposition on the states’ sovereignty undeniably countenanced by Katz and Hood.
To the extent that Hood implies in a footnote that there could possibly be some exercise of in rem jurisdiction that conceivably might offend the sovereignty of the state,[27] “such concerns are not present here.”[28] Indeed, Soileau’s is even a stronger case for rejection of the State’s sovereign immunity defense than was Hood’s or Katz’s. Hood, after all, addressed an adversarial proceeding involving a state, and Katz addressed an order for the avoidance of preferential transfers to a state to allow the trustee to recoup those transfers from the state’s treasury— each proceeding carrying with it some of the trappings traditionally associated with a suit against a state. Soileau’s, in contrast, carries none: She is neither seeking the return of any funds already in the State’s possession nor bringing an adversarial proceeding against the State. She asks nothing more than that the bankruptcy court exercise its in rem jurisdiction over her bankruptcy estate by adjudicating the rights of the State as a creditor. As such an exercise of in rem jurisdiction is indisputably contemplated by Katz,[29] the State’s sovereign immunity claim must fail.

D. Hood’s Footnote Five and Hickman

That should be the end of this appeal, disposing of the case as it does on the sole issue raised by the State, viz., sovereign immunity. But our co-panelist (“the Con-currer”) has opted to make a collateral attack on our six-year old precedent in Hickman v. Texas’s[30] construction of § 523(a)(7) of the Bankruptcy Code. In the special concurrence, the concurrer writes that, although “Hood and Katz may dispose of any Eleventh Amendment sovereign immunity claim that Texas could[31] raise here, ... those cases do not resolve whether the Bankruptcy Code in fact authorizes the discharge of Soileau’s defaulted bail bonds.” The Concurrer urges that, because our prior precedent in Hickman requires us to find that Soileau’s judgment *309 debt was contractual in nature, we are “bound to apply Hickman and reject the State’s nondischargeability claim.” The gravamen of the Concurrer’s writing is that Hickman was wrongly decided, so we should now rehear Soileau’s case en banc to abrogate the 2001 rule in Hickman. We respectfully disagree with that proposal. Here’s why.
In Hickman, as here, a bail bondsman filed for bankruptcy, seeking to discharge all debt from her bail bond business. The State filed a complaint to determine whether her debts to it were dischargea-ble. Significantly, Texas did not claim Eleventh Amendment sovereign immunity in Hickman as it does here against Soi-leau, arguing in Hickman only that, because the debt was a forfeiture, it was nondischargeable under the Bankruptcy Code, specifically 11 U.S.C. § 523(a)(7). This provision of the Bankruptcy Code specifies, in relevant part, that the debt of an individual debtor is nondischargeable to “the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit.” The Hickman bankruptcy court agreed with the State, but the district court reversed, holding that bail bond forfeitures were not the type of penal forfeiture contemplated by § 523(a)(7).[32] Neither opinion turned on sovereign immunity or on § 106(a) of the Bankruptcy Code. Neither, as we shall show, did the Hickman opinion turn on the contractual nature of the debtor’s bail bond obligation to the State, as the Con-currer represents it.
On appeal, we held that:
[Bankruptcy Code section] 523(a)(7) excludes from discharge only those forfeitures imposed because of misconduct or wrongdoing by the debtor. Hickman’s debt arising from her failure to fulfill her contractual obligation to the State as a surety on a criminal bail bond is not the sort of punitive or penal forfeiture rendered nondischargeable by § 523(a)(7).[33]
In so holding, we expressly rejected the argument advanced by Texas that finding bail bond forfeiture debts dischargeable would undermine the effective administration of its criminal justice system.[34]
With due respect to the position advocated in the special concurrence, this case is not the appropriate vehicle for a reexamination of Hickman’s holding, as the State has not advanced what the Concurrer refers to as a “nondischargeability claim.” Rather, the only legal theory asserted by the State both today and before the lower courts is Eleventh Amendment sovereign immunity. In its brief to us, for example, the State clarified that its “Motion in the present case claims sovereign immunity. The State does not even raise an issue concerning the dischargeability of Soileau’s criminal bail bond forfeiture judgments.”[35] Likewise, at oral argument, the State observed that “this case is not concerned directly with the issue of whether the Fifth Circuit’s decision [regarding the dischargeability of bail bond judgments in Hickman] is accurate.”
Although both the State and the lower courts did address Hickman, they did so only in the context of determining whether, under Hood’s footnote five, discharge in the instant case would offend the State’s sovereign immunity, not whether the debt was dischargeable vel non. Indeed, the State criticized the lower courts in its brief to us, asserting that they had “fail[ed] to *310 distinguish and apply the State’s claim of sovereign immunity from the question of dischargeability of debt with both courts relying on the In re Hickman case, which ... did not even involve a sovereign immunity issue.”[36] The special concurrence similarly conflates the State’s sovereign immunity argument with this so-called “nondischargeability claim”—a claim not advanced to us or to the lower courts. As the issue of dischargeability was never raised,[37] we limit our holding to the issue before us—whether discharge of Soileau’s debt impermissibly infringes on the State’s sovereign immunity.
Even assuming arguendo, however, that there is in fact a “statutory question raised here,” as the Coneurrer suggests, Hickman’s holding that § 528(a)(7) only excludes from discharge those debts incurred by wrongdoing or misconduct—and that judgments against the sureties on bail bonds (as distinguished from “forfeitures” by the defaulting principals), such as the one at issue here are dischargeable—should not be revisited. Although no effort to rehear Hickman was mounted before its mandate issued in 2001, the Con-eurrer now seeks to use the instant appeal to challenge Hickman en banc by contending “[t]hat Soileau owes a forfeiture debt to a governmental entity should be disposi-tive” that the debt is nondischargeable. Contrary to the Concurrer’s position, however, Hickman’s interpretation of § 523(a)(7) is consistent with the established definitions of that section’s exclusive trio of fines, penalties, and forfeitures.
From the standpoint of statutory construction, “forfeiture” in § 523(a)(7) must be understood in light of its relationship to the other nouns in that section’s exclusive list, ie., “fine” and “penalty.” According to Black’s Law Dictionary, a forfeiture is: (1) “[t]he divestiture of property without compensation,” (2) “[t]he loss of a right, privilege, or property because of a crime, breach of obligation, or neglect of duty,” (3) “[sjomething (esp. money or property) lost or confiscated by this process; a penalty”, (4) “A destruction or deprivation of some estate or right because of the failure to perform some obligation or condition contained in the contract.”[38] The American Heritage Dictionary defines a forfeiture as “the act of surrendering something as a forfeit,”[39] then defines forfeit as “something surrendered as punishment for a crime, offense, error, or breach of contract.”[40] Although these definitions alone might leave open the possibility that the type of judgment debt at issue here should be considered a forfeiture for purposes of § 523(a)(7), Congress’s synonym-izing use of “forfeiture” with “penalty” and “fine” supports Hickman’s more narrow interpretation of this section as applicable only to takings grounded in wrongful acts *311 and effectuating a punishment therefor.[41] In Hickman, we explained:
A penalty is “[a]n elastic term with many different shades of meaning; it involves [the] idea of punishment, corporeal or pecuniary, or civil or criminal, although its meaning is generally confined to pecuniary punishment.” Black’s Law Dictionary 1133 (6th ed.1990). Central to the definition of penalty is the “idea of punishment” — “[p]unishment imposed on a wrongdoer, esp. in the form of imprisonment or fine. Though usu. for crimes, penalties are also sometimes imposed for civil wrongs.” Black’s Law Dictionary 1153 (7th ed.1999). The term penalty, however, may also include “[t]he sum of money which the obligor of a bond undertakes to pay in the event of his omitting to perform or carry out the terms imposed upon him by the conditions of the bond,” Black’s Law Dictionary 1133 (6th ed.1990), or “[e]xcessive liquidated damages that a contract purports to impose on a party that breaches.” Black’s Law Dictionary 1153 (7th ed.1999). Although focusing on punishment for criminal and civil wrongs, the definition of penalty, like forfeiture, could be read expansively to include the [bail bondsman’s] debt. A fine, on the other hand, relates solely to “[a] pecuniary punishment or civil penalty payable to the treasury.” Black’s Law Dictionary 647 (7th ed.1999).[42]
The Hickman court summarized, “[t]he definitions of penalty and fine reflect the traditional understanding of the these terms as punitive or penal sanctions imposed for some form of wrongdoing. Their inclusion in § 523(a)(7) implies that Congress intended to limit the section’s application to forfeitures imposed upon a wrongdoing debtor.”[43]
Mindful of “the principle that exceptions to discharge are to be narrowly construed,”[44] we agree with Hickman’s interpretation of § 523(a)(7) as excepting from discharge only those debts incurred as a result of misconduct or wrongdoing. Indeed, this holding is consistent with the purpose of the Bankruptcy Code and, specifically, with § 523(a).[45] We cannot overemphasize here the importance of the distinction between the absconding criminal defendants as principals and the bail bondsmen as sureties: The former would properly be denied discharge on their own cash or property bonds as “forfeitures” in the § 523(a)(7) sense, but the latter are *312 not forfeiting wrongdoers; they are ordinary judgment debtors who are not guilty of any wrongful conduct that should prohibit discharge in bankruptcy.
The Concurrer maintains that “Hickman’s conclusion that ‘[b]ail bond judgments are not penal sanctions ... but rather arise from a contractual duty,’ is ... at odds with over a century of Texas precedent” characterizing bail bond judgments as criminal in nature. Whatever the merits of this argument, it fails to render the debts at issue nondischargeable, as determination of the dischargeability of judgment debts like Soileau’s does not turn on whether that debt was contractual, statutory, or criminal in nature. Rather, it turns on whether the debt was incurred as a result of the bail bondsman’s wrongful acts. A bail bondsman’s judgment debt to the state, arising as it does solely from a criminal defendant’s wrongful act of absconding, is not the result of any act of misconduct or wrongdoing by the bail bondsman. As the Fourth Circuit observed in In re Collins,
“[i]t cannot be said that [the bail bondsman] was being punished by virtue of incurring these [bail bond] obligations. [He] committed no criminal or penal act which gave rise to such debts. These bail bond forfeiture obligations, as to [him], arose from a purely financial and contractual arrangement.”[46]
This is so whether the proceedings to recover the judgment debt are labeled criminal or contractual. Thus, Soileau’s judgment debts are properly dischargeable&— even though, we repeat, that question is not presented here.
Allowing Soileau’s debts to the State to be discharged, insists the Concurrer, would impermissibly “invalidate the results of state criminal proceedings,” as the Supreme Court has instructed the federal courts may not do.[47] We do not question the degree of importance of the bail bond surety in the broad scheme of Texas’s criminal justice system. We disagree, however, that the discharge of the bail bondsman’s debt “invalidate^ the results of state criminal proceedings.” Bail bonds in state criminal proceedings, after all, are designed primarily to make criminal defendants either (1) appear or (2) pay a forfeiture&—only secondarily to make bail bondsmen pay. The State’s (and the Con-currer’s) parade of horribles that today’s holding will produce in relation to the administration of its criminal justice system is at best entirely speculative hyperbole; in fact, it is belied by the apparent continued functioning of the Texas criminal justice system in the years since Hickman.
This simply is not a situation, as likewise hyperbolized by the Concurrer in today’s special concurrence, wherein the bankruptcy court is accused of using “its in rem jurisdiction to ride roughshod over this traditional bastion of state sovereignty.” Rather, to a much lesser degree than in either Katz or Hood, the bankruptcy court here is discharging a debt by determining the rights of the State as a creditor, a quintessential exercise of its in rem jurisdiction that indisputably is permitted under Hood and Katz. It matters not under those Supreme Court cases whether the State’s judgments against Soileau arose from contracts or forfeitures or torts or strict liability.

III. Conclusion

The State has sought to avoid discharge of judgments that were rendered in state *313 court against Soileau as the statutory surety on bail bonds that she wrote under Texas’s scheme for the release of criminal defendants pending future appearances. Having earlier failed, in Hickman, to avoid this precise kind of discharge on non-constitutional grounds of statutory interpretation of the Bankruptcy Code, Texas has here taken a second bite at that apple but on an entirely different tack, basing its affirmative efforts to avoid discharge solely on the constitutional ground of Eleventh Amendment sovereign immunity. Yet the Supreme Court, in Hood and Katz, has left no doubt that the several states remain immutably bound by their long-standing waivers of sovereign immunity under the Bankruptcy Clause of the United States Constitution, at least as to non-adversary in rem discharge proceedings in bankruptcy, like this one. Accordingly, the judgment of the bankruptcy court, and the district court’s affirmance of it, are
AFFIRMED.

. 546 U.S. 356, 126 S.Ct. 990, 163 L.Ed.2d 945 (2006).

. 541 U.S. 440, 124 S.Ct. 1905, 158 L.Ed.2d 764 (2004).

. 260 F.3d 400 (5th Cir.2001). As we shall more fully demonstrate below, the bankruptcy court's refusal to deny discharge of Soileau’s judgment debts owed to the State was compelled by Hood alone; consideration of our earlier decision in Hickman was wholly unnecessary. Not only do Katz and Hood leave no doubt that sovereign immunity does not bar the discharge involved in this case, Hickman is inapposite, as the State here acknowledges, because it was neither based nor decided on a claim of sovereign immunity by *305 Texas. Hickman was argued and decided exclusively on a statutory interpretation of the Bankruptcy Code. In contrast, the only legal theory asserted by the State today is Eleventh Amendment sovereign immunity, albeit the State noted in passing its continuing disagreement with Hickman.

. U.S. Const. amend. XI.

. Hood, 541 U.S. at 446, 124 S.Ct. 1905 (collecting cases).

. Id.

. Nationwide Mut. Ins. Co. v. Berryman Prods. (In re Berryman), 159 F.3d 941, 943 (5th Cir.1998).

. As we discuss more fully below, the State did not argue, either before us or to the lower courts, that Soileau's debt should be nondis-chargeable by virtue of § 523(a)(7) of the Bankruptcy Code.

. Id. at 443-45, 124 S.Ct. 1905.

. Id. at 445, 124 S.Ct. 1905.

. The Bankruptcy Clause states that Congress shall have the power “[t]o establish ... uniform Laws on the subject of Bankruptcies throughout the United States.” U.S. Const. art. 1, § 8, cl. 4.

. Hood, 541 U.S. at 443, 124 S.Ct. 1905.

. Section 106(a) provides, in part, "[n]ot-withstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unity ... with respect to” delineated sections of the Bankruptcy Code. 11 U.S.C. § 106(a).

. Hood, 541 U.S. at 443, 124 S.Ct. 1905.

. Id. at 447, 124 S.Ct. 1905 (The bankruptcy court's “jurisdiction is premised on the debtor and his estate, and not on his creditors.”).

. Id. at 448, 124 S.Ct. 1905 (citation omitted).

. Under 11 U.S.C. § 523(a)(8), student loan debts guaranteed by the government are presumed to be nondischargeable. To obtain a discharge of these debts, the debtor must therefore demonstrate that excepting the debt from the discharge order would impose "undue hardship.” 11 U.S.C. § 523(a)(8).

. Hood, 541 U.S. at 450, 124 S.Ct. 1905.

. Id. at 451, 124 S.Ct. 1905.

. Katz, 546 U.S. 356, 126 S.Ct. 990, 995, 163 L.Ed.2d 945 (2006).

. Section 547(b) of the Bankruptcy Code states:
Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
*307 (1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made&—
(A) on or within 90 days before the date of the filing of the petition; or
(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if&—
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.
11 U.S.C. § 547(b).
Under Section 550(a) of the Bankruptcy Code,
[e]xcept as otherwise provided in this section, to the extent that a transfer is avoided under[, inter alia,'] section ... 547 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from&—
(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
(2) any immediate or mediate transferee of such initial transferee.
11 U.S.C. § 550(a).

. Katz, 126 S.Ct. at 994-95.

. Id. at 1005.

. Id. at 1002.

. Katz, 126 S.Ct. at 1000 ("In ratifying the Bankruptcy Clause, the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the in rem jurisdiction of the bankruptcy courts."); Hood, 541 U.S. at 448, 124 S.Ct. 1905 ("At least when the bankruptcy court's jurisdiction over the res is unquestioned, our cases indicate that the exercise of its in rem jurisdiction to discharge a debt does not infringe state sovereignty.”).

. Id. at 996 (“Critical features of every bankruptcy proceeding are the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor’s creditors, and the ultimate discharge that gives the debtor a 'fresh start’ by releasing him, her, or it from further liability for old debts.").

. Hood's footnote 5 states:
This is not to say, "a bankruptcy court’s in rem jurisdiction overrides sovereign immunity,” as Justice Thomas characterizes our opinion, but rather that the court’s exercise of its jurisdiction to discharge a student loan debt is not an affront to the sovereignty of the State. Nor do we hold that every exercise of a bankruptcy court's in rem jurisdiction will not offend the sovereignty of the State. No such concerns are present here, and we do not address them.
Hood, 541 U.S. at 451 n. 5, 124 S.Ct. 1905 (quoting United States v. Nordic Village, Inc., 503 U.S. 30, 38, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992)).

. Id.

. Katz, 126 S.Ct. at 1004 ("The ineluctable conclusion, then, is that States agreed in the plan of the Convention not to assert any sovereign immunity defense they might have had in proceedings brought pursuant to 'Laws on the subject of Bankruptcies.’ ”) (emphasis added).

. 260 F.3d 400, 406 (5th Cir.2001).

. The Concurrer’s use of “could” here is misleading, as it suggests that it is merely theoretical that the State might raise this claim when the State has raised a sovereign immunity claim. In contrast, it has not challenged the dischargeability of the debt under § 523(a)(7), implicitly acknowledging that our precedent in Hickman forecloses such a claim.

. In re Hickman, 260 F.3d at 401.

. Id.

. Id. at 406.

. (Emphasis added).

.In its reply, the State does suggest that "the Fifth Circuit, in light of [the Third Circuit’s holding in Dobrek v. Phelan, 419 F.3d 259 (3d Cir.2005) ], may wish to reconsider its position in Hickman ... on the dis-chargeability of criminal bond forfeiture judgments.” Nevertheless, Texas does not expressly challenge the dischargeability of Soileau's debts under § 523(a)(7) in the face of our binding precedent in Hickman; rather, it concludes by requesting that "the decisions of the bankruptcy court and the district court be reversed allowing the State to claim sovereign immunity in the bankruptcy court.”

. See Robinson v. Guarantee Trust Life Ins. Co., 389 F.3d 475, 481 n. 3 (5th Cir.2004) ("Failure adequately to brief an issue on appeal constitutes waiver of that argument.”).

. Black’s Law Dictionary 677 (8th ed.2004).

. American Heritage Dictionary 515 (ed. William Morris, 1976).

. Id.

. As we recognized in Hickman, "a word is known by the company it keeps.” In re Hickman, 260 F.3d at 403 (quoting Gustafson v. Alloyd Co., Inc., 513 U.S. 561, 575, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995)).

. Id. at 403-04.

. id. at 404.

. Id. at 404 (quoting In re Tran, 151 F.3d 339, 342 (5th Cir.1998)); see also In re Walker, 48 F.3d 1161, 1164-65 (11th Cir.1995) (noting "obligation to construe strictly exceptions to discharge to give effect to the fresh start policy of the Bankruptcy Code”).

. Lines v. Frederick, 400 U.S. 18, 19, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970) (per curiam) ("The most important consideration limiting the breadth of the definition of 'property' lies in the basic purpose of the Bankruptcy Act to give the debtor a ‘new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-exist-ing debt. The various provisions of the Bankruptcy Act were adopted in the light of that view and are to be construed when reasonably possible in harmony with it so as to effectuate the general purpose and policy of the act.' ") (quoting Local Loan Co. v. Hunt, 292 U.S. 234, 244-45, 54 S.Ct. 695, 78 L.Ed. 1230 (1934) (citations omitted)); In re Cross, 666 F.2d 873, 880 (5th Cir.z

. In re Collins, 173 F.3d 924, 932 (4th Cir.1999) (quoting In re Paige, No. 86 B 8072 C, 1988 WL 62500, *4 (Bankr.D.Colo. Apr.15, 1988)).

. Kelly v. Robinson, 479 U.S. 36, 47, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986).