IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-10604

_____

In the Matter of: STEVEN M. HICKMAN; GINA L. HICKMAN,

Debtors

_____

STEVEN M. HICKMAN; GINA L. HICKMAN,

Appellees,

versus

STATE OF TEXAS,

Appellant.

_____
Appeal from the United States District Court
for the Northern District of Texas
_____
July 26, 2001

Before HILL*, JOLLY and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

The State of Texas appeals the district court's determination that the debt owed to it by Gina and Steven Hickman ("the Hickmans") arising from bail bond forfeitures was dischargeable. The State argues that because the default of a bail bond is colloquially referred to as a "forfeiture," a judgment against a bail bond surety should be nondischargeable under the plain

_____

    * Circuit Judge of the Eleventh Circuit, sitting by designation.

language of § 523(a)(7). Section 523(a)(7) excepts from discharge certain debts for fines, penalties or forfeitures. The Hickmans argue, in response, that a debt incurred by a surety under a bail bond contract with the State is not the nature of forfeiture Congress intended to render nondischargeable under § 523(a)(7).

For nearly ten years, Gina Lynn Hickman ("Hickman") owned and operated a bail bonding business in Tarrant County, Texas. She served as a surety on criminal bail bonds; when a criminal defendant failed to appear in court, a judgment for the amount of the bond was entered against her. The Tarrant County Bail Bond Board issued and renewed Hickman's bail bond license for two year terms from June 1989 to August 1997 based on a sworn financial statement attesting that her net worth satisfied statutory requirements. Under Tx. Occ. § 1704.203, a bail bond license holder can execute bail bonds in an aggregate amount up to ten times the value of the property held as security. Because Hickman pledged property valued at $116,800 as collateral, she was entitled to write in excess of $1 million in criminal bail bonds.

On June 24, 1999, Gina Hickman and her husband filed for bankruptcy, seeking to discharge all debt from the bail bond business. At the time, Texas' bond forfeiture judgments against her totaled more than $50,000. The State of Texas filed a complaint to determine dischargeability of the Hickmans' bond forfeiture debt. Without a hearing, the bankruptcy court ruled the bond forfeiture debts were nondischargeable under § 523(a)(7). The

2

district court reversed, finding that the Hickmans' bail bond forfeitures were not the type of penal forfeiture contemplated by § 523(a)(7). The State filed a timely appeal with this Court.

In reviewing the bankruptcy court's order, we apply the same standards of review as did the district court: the bankruptcy court's findings of fact are analyzed for clear error, and its conclusions of law are reviewed de novo. *In re Mercer*, 246 F.3d 391, 402 (5th Cir. 2001) (en banc). As a question of law, we review de novo the bankruptcy court's interpretation of the term "forfeiture" as used in § 523(a)(7). Construing forfeiture in light of the accompanying terms in § 523(a)(7), § 523(a) as a whole, and the basic policy and object of the Bankruptcy Code, we hold that § 523(a)(7) excludes from discharge only those forfeitures imposed because of misconduct or wrongdoing by the debtor. Hickman's debt arising from her failure to fulfill her contractual obligation to the State as a surety on a criminal bail bond is not the sort of punitive or penal forfeiture rendered nondischargeable by § 523(a)(7).

### *Discussion*

Section 523(a)(7) of the Bankruptcy Code excepts from discharge any debt

> to the extent that such debt is for a fine, penalty or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss.

3

11 U.S.C. § 523(a)(7).  Hickman's bail bond judgment is payable to the State of Texas, for the benefit of the State of Texas, and is not compensation for actual pecuniary loss.   The statute's applicability to Hickman's bond forfeiture debt thus turns on the meaning of the phrase "fine, penalty or forfeiture" within the context of § 523(a)(7).

In answering any statutory question, we begin with the language of the statute itself.  *United States v. Ron Pair Enterprises*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030 (1989); *Kellogg v. United States*, 54 F.3d 1194, 1200 (5th Cir. 1995).  The term forfeiture is:

> A comprehensive term which means a divestiture of *specific property* without compensation; it imposes a loss by taking away of some preexisting valid right without compensation.  A deprivation or destruction of some obligation or condition.  Loss of some right or property as a penalty for some illegal act.  Loss of property or money because of breach of a legal obligation (e.g. default in payment).

BLACK'S LAW DICTIONARY 650 (6th ed. 1990) (citations omitted) (emphasis added).  A forfeiture of a bond occurs upon the "failure to perform the condition upon which obligor was to be excused from the penalty in the bond.  With respect to a bail bond, occurs when the accused fails to appear for trial."  *Id.* (citation omitted).  Relying on this definition, at least one court has concluded that "Debtor's obligation on the forfeited bail bond appears to fall squarely within the parameters of § 523(a)(7)."  *United States v. Zamora*, 238 B.R. 842, 843-44 (D. Ariz. 1999).

4

As a product of history, the term "forfeiture" in the bail bond context has become associated with the contractual damages owed to the State by an obligor – the defendant or his surety – on a bond. Historically, a defendant or his surety was required to post the full amount of the bond in order to secure release. However, the bonding system has evolved to allow the defendant or a professional bondsmen to enter into a contractual agreement with the State to guarantee the defendant's presence in court. Under this agreement, the State does not require payment of the entire amount of the bond in order to secure release. Rather, the State requires a contractual promise to pay the amount of the bond by the defendant or his surety if the defendant fails to comply with the conditions of the bond. Upon default, the State merely seeks a money judgment as damages for breach of contract against the obligor under the bond. We cannot ignore that in common parlance, and consistently throughout history, the label "forfeiture" has been affixed to a bail bond debt. This common usage is evidenced by the dictionary definition of forfeiture as well as the term's use in state and federal statutes[1] and caselaw. We, therefore, consider whether Congress intended § 523(a)(7) to apply to bail bond forfeiture debts by a surety.

---

[1] *See* Tx. Occ. § 1704.204(a) ("A license holder shall pay a final judgment on a forfeiture of a bail bond . . . ."); Federal Rule of Criminal Procedure 46(e)(1) ("If there is breach of condition of bond, the district court shall declare a forfeiture of the bail.").

5

A majority of courts have read forfeiture within § 523(a)(7) not to include the contractual damages incurred by a professional bondsmen as a result of the defendant's failure to appear. *In re Collins*, 173 F.3d 924, 931 (4th Cir. 1999); *In re Damore*, 195 B.R. 40 (Bankr. E.D. Pa. 1996); *In re Midkiff*, 86 B.R. 239 (Bankr. D. Colo. 1988); *In re Paige*, 1988 WL 62500 (Bankr. D. Colo. 1988). These courts principally rely on the Supreme Court's analysis of § 523(a)(7) in *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353 (1986). In *Kelly*, the Supreme Court held that restitution paid as a condition of probation was nondischargeable under § 523(a)(7). *Id.* at 52. Although not specifically listed in § 523(a)(7), the Court held that because § 523(a)(7) "creates a broad exception for all penal sanctions, whether they be denominated fines, penalties, or forfeitures," restitution payments were included within its scope. *Kelly*, 479 U.S. at 51. Relying on *Kelly* and its own precedent, the Fourth Circuit concluded that "[t]he nondischargeable 'fine, penalty or forfeiture' under § 523(a)(7) is an obligation that is essentially penal in nature." *In re Collins*, 173 F.3d at 931.

To the extent that "[t]he word 'penal' is inherently a much broader term than 'criminal' since it pertains to any punishment or penalty and relates to acts which are not necessarily delineated as criminal," we ultimately agree with the Fourth Circuit's conclusion. BLACK'S LAW DICTIONARY 1132 (6th ed. 1990). However, in light of the question presented in *Kelly* – whether, although not

6

listed, restitution was excepted from discharge under § 523(a)(7) – the Supreme Court's construction of § 523(a)(7) does not itself prevent the section's application to bail bond judgments against a surety. In focusing on whether § 523(a)(7) created a broad exception for all penal sanctions, thus including restitution, the Court did not decide § 523(a)(7)'s applicability to civil, non-penal debts. Thus, while the Court's analysis and approach in *Kelly* are instructive, its holding does not compel the result that debts incurred in the capacity of a surety on a bail bond are dischargeable.

In *Kelly*, the Court found the language of § 523(a)(7) ambiguous. *Kelly*, 479 U.S. at 48 n.9; *see also id.* at 50 (finding the language of § 523(a)(7) "is subject to interpretation"). The Court then admonished that "[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Kelly v. Robinson*, 479 U.S. 36, 43, 107 S.Ct. 353, 357-58 (1986) (citations omitted). Thus, in discerning Congress' intent we must consider (1) the terms accompanying forfeiture in § 523(a)(7); (2) § 523(a) as a whole; and (3) the policies underlying the Bankruptcy Code and its exceptions to discharge.

Under the familiar canon of statutory construction *noscitur a sociis*, "a word is known by the company it keeps." *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 575, 115 S.Ct. 1061, 1069 (1995).

7

This canon is "often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress." *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307, 81 S.Ct. 1579, 1582, 6 L.Ed.2d 859 (1961). The intended breadth of forfeiture within § 523(a)(7) must be interpreted, therefore, in light of its accompanying terms "penalty" and "fine." A penalty is "[a]n elastic term with many different shades of meaning; it involves idea of punishment, corporeal or pecuniary, or civil or criminal, although its meaning is generally confined to pecuniary punishment." BLACK'S LAW DICTIONARY 1133 (6th ed. 1990). Central to the definition of penalty is the "idea of punishment" – "[p]unishment imposed on a wrongdoer, esp. in the form of imprisonment or fine. Though usu. for crimes, penalties are also sometimes imposed for civil wrongs." BLACK'S LAW DICTIONARY 1153 (7th ed. 1999). The term penalty, however, may also include "[t]he sum of money which the obligor of a bond undertakes to pay in the event of his omitting to perform or carry out the terms imposed upon him by the conditions of the bond," BLACK'S LAW DICTIONARY 1133 (6th ed. 1990), or "[e]xcessive liquidated damages that a contract purports to impose on a party that breaches."[2] BLACK'S LAW DICTIONARY 1153 (7th ed. 1999). Although focusing on punishment for criminal and civil wrongs, the definition of penalty, like forfeiture, could be read

_____

[2] To the extent that the State argues alternatively that the Hickmans' debt is a penalty, our analysis limiting the potentially broad scope of forfeitures excluded from discharge under § 523(a)(7) applies with equal force to their penalty argument.

8

expansively to include the Hickmans' debt.  A fine, on the other hand, relates solely to "[a] pecuniary punishment or civil penalty payable to the treasury."[3]  BLACK'S LAW DICTIONARY 647 (7th ed. 1999). The definitions of penalty and fine reflect the traditional understanding of the these terms as punitive or penal sanctions imposed for some form of wrongdoing.  Their inclusion in § 523(a)(7) implies that Congress intended to limit the section's application to forfeitures imposed upon a wrongdoing debtor.

This construction of forfeiture also accords with Congress' statutory scheme in § 523(a) as a whole.  The exceptions to discharge in § 523(a) advance a miscellany of social policies. Notably, the majority of these exceptions relate to a form of wrongdoing by the debtor.  *See In re Cross*, 666 F.2d 873, 880 (5th Cir. 1982) ("The exceptions to discharge found in [§ 523(a)] were designed to prevent the bankrupt from avoiding through bankruptcy the consequences of certain wrongful acts . . .").  Interpreting § 523(a)(7) against the backdrop of § 523(a) further suggests Congress' intent to limit the scope of the phrase "fine, penalty or forfeiture" to debts imposed as punishment for wrongdoing by the debtor.

Finally, "[t]he most important consideration limiting the breadth of the definition of [forfeiture] lies in the basic purpose

---

[3] A fine is "[a] pecuniary punishment or penalty imposed by lawful tribunal upon person convicted of crime or misdemeanor." BLACK'S LAW DICTIONARY  632 (6th ed. 1990).

of the Bankruptcy Act to give the debtor a 'new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt. The various provisions of the Bankruptcy Act were adopted in the light of that view and are to be construed when reasonably possible in harmony with it so as to effectuate the general purpose and policy of the act.'" *Lines v. Frederick*, 400 U.S. 19, 19, 91 S.Ct. 113, 113-14 (1970) (citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 244-45, 54 S.Ct. 695, 699 (1934)). Consistent with the Code's basic purpose of "reliev[ing] the honest debtor from the weight of oppressive indebtedness and permit[ting] him to start afresh," *Williams v. U.S. Fidelty & Guar. Co.*, 236 U.S. 549, 554-55, 35 S.Ct. 289 (1915); *Hardie v. Swafford Bros. Dry Goods Co.*, 165 F. 588, 590-91 (5th Cir. 1908), exceptions to discharge are to be construed narrowly. *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289 (1915); *In re Case*, 937 F.2d 1014, 1024 (5th Cir. 1991). However, such construction should not permit the bankruptcy courts to become "a haven for wrongdoers." *In re Davis*, 194 F.3d 570, 573 (5th Cir. 1999). Our precedent has construed the exceptions in § 523(a) and its predecessor using these competing policies as guideposts.

Section 17a, 11 U.S.C. § 35a, of the Bankruptcy Act was the predecessor to the modern Code's § 523(a). Section 17a(4) excepted from discharge debts "created by fraud, embezzlement, misappropriation, or defalcation while acting . . . in any

10

fiduciary capacity." 11 U.S.C. § 35a(4). This Court, relying on Supreme Court precedent, construed the term "fiduciary" narrowly in order to effectuate the Act's purpose of providing a fresh start. *In re Angelle*, 610 F.2d 1335, 1339 (5th Cir. 1980) (citing *Chapman v. Forsyth*, 2 U.S. (How.) 202, 207 (1844)). Despite the presence of the word "any" in the statute, we rejected the district court's reliance on the broad definition of fiduciary quoted from Black's Law Dictionary. *Id.* at 1338. Instead, we concluded that "[c]onsistent with the principle that exceptions to discharge are to be narrowly construed, the concept of fiduciary under § 523(a)(4) is narrower than it is under the general common law." *In re Tran*, 151 F.3d 339, 342 (5th Cir. 1998) (citing *In re Angelle*, 610 F.2d at 1339).

More recently this Court was asked to interpret the term "motor vehicle" in § 523(a)(9) to include motorboats.[4] *In re Greenway*, 71 F.3d 1177, 1180 (5th Cir. 1996). The creditor argued that parsing the term "motor vehicle" to its component parts permitted such a construction. Citing our duty to construe exceptions narrowly in favor of the debtor, we refused to interpret the term "motor vehicle" so expansively. *In re Greenway*, 71 F.3d

---

[4] Section 523(a)(9) makes nondischargeable any debt:

for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance.

at 1180 n.8.  Guided by this same principle, we limited the scope of the term "willful and malicious injury" under § 523(a)(6) to "conduct designed to cause deliberate or intentional injury" and not merely intentional conduct that resulted in injury.  *In re Quezada*, 718 F.2d 121, 123 (5th Cir. 1983); *see also In re Walker*, 48 F.3d 1161, 1164-65 (11th Cir. 1995) ("Mindful of our obligation to construe strictly exceptions to discharge to give effect to the fresh start policy of the Bankruptcy Code, we hold that section 523(a)(6) requires a deliberate or intentional injury." (citation omitted)).

Consistent with our precedent, the accompanying terms in § 523(a)(7), Congress' statutory scheme in § 523(a) as a whole, and the basic object and policy of the Bankruptcy Code, we construe narrowly the term forfeiture to apply solely to forfeitures imposed because of misconduct or wrongdoing by the debtor.[5] *See In re Gi Nam*, 254 B.R. 834, 843 (E.D.Pa. 2000).  This construction provides relief to the honest debtor, while preventing the wrongdoer from avoiding the imposition of a forfeiture through invocation of federal bankruptcy law.

Our inquiry thus turns to whether the Hickmans' debt arising

---

[5] The little legislative history that exists supports this construction.  *See* S. Rep. No. 95-989 at 79, reprinted in 1978 U.S.C.C.A.N. 5787, 5865 (stating that § 523(a)(7) is meant to apply to tax assessments that are "penal in nature"); S. Rep. No. 95-989 at 97, reprinted in 1978 U.S.C.C.A.N. 5787, 5883 (describing similar language in § 726(a)(4) as relating to "punitive penalties").

from a bail bond forfeiture under Texas law falls within Congress' intended scope. Whether the bail bond debt of a surety is a forfeiture under § 523(a)(7) is a question of federal law. *See Angelle*, 610 F.2d at 1341 (stating that the scope of the concept "fiduciary" under § 523(a) is a question of federal law). But we look to state law to determine whether the debt at issue possesses the attributes of a forfeiture. *Id.*

Judgements entered in Texas state court against a surety upon the principal's failure to appear order the bail bond "forfeited." *Reyes v. State*, 31 S.W.3d 343, 345 (Tex. App.–Corpus Christi 2000). The State relies on this label to argue that the Hickmans' debt is a forfeiture subject to § 523(a)(7)'s exception to discharge. We cannot agree that merely because a bail bond judgment is generally referred to as a forfeiture, it automatically falls within the bounds of § 523(a)(7). It is important to examine the true nature of the debt incurred rather than the label attached to it by the State. *See In re Long*, 774 F.2d 875, 878-79 (8th Cir. 1985) ("It is the substance of a transaction, rather than the labels assigned by the parties, which determines whether there is a fiduciary relationship for bankruptcy purposes.") (citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934)). Otherwise, the State could except from discharge all manner of debts simply by labeling them a fine, penalty or forfeiture.

13

Texas courts have recognized that "[b]ail bonds are contracts between the surety and the State" and that "[t]he contract consists of a promise by the surety that the principal will appear before the court in exchange for a promise by the State that it will release the principal." *Reyes v. State*, 31 S.W.3d at 345; *Morin v. State*, 770 S.W.2d 599, 599 (Tex. App.–Houston 1989). The Hickmans argue that Texas courts' recognition of a bail bond as a contract renders any damages therefrom dischargeable. This argument suffers from the same deficiency as the State's argument on the label "forfeiture." A bail bond contract is *sui generis*. While treated as a contract under state law in many respects, a bail bond is certainly distinguishable from the typical contract. First, the forfeiture of the bonded amount bears no relation to the actual loss suffered by the State – thus, under general rules of contract the provision would be struck down as an impermissible penalty or forfeiture clause. *See Restatement (Second) of Contracts* § 356; Uniform Commercial Code § 2-718. Second, the bail bond is an integral and essential tool in the administration of the State's criminal justice system.

Still, under the present structure of the Texas bail bond system the role of the surety is essentially contractual. When considering § 523(a)(7)'s application to restitution payments, the Supreme Court noted that "[u]nlike an obligation which arises out of a contractual, statutory or common law duty, here the obligation

14

is rooted in the traditional responsibility of a state to protect its citizens by enforcing its criminal statutes and to rehabilitate an offender by imposing a criminal sanction intended for that purpose." *Kelly*, 479 U.S. at 52. Contrary to the obligation in *Kelly*, Hickman's bail bond judgments are not a penal sanction rooted in the traditional responsibility of the state to protect its citizens, but rather arise from a contractual duty. In this regard, the damages are the type of contract damages typically discharged in bankruptcy. Thus, Hickman's debt arising from the forfeiture of the bail bond is not the sort of punitive or penal forfeiture Congress intended to render nondischargeable.

Finally, we address the State of Texas' contention that our holding will undermine the effective administration of its criminal justice system. Along these lines, the State argues that *Kelly*'s true relevance in this case is its statement that "[t]his Court has recognized that the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief." *Kelly*, 479 U.S. at 49. The State's position is not wholly unpersuasive. Indeed, several courts have been persuaded by this reasoning in interpreting other sections of the Code. *See In re Scott*, 106 B.R. 698, 701 (Bankr. S.D. Ala. 1989) (interpreting § 362(b)(4) in light of concerns over the effect on the functioning of the State's bail

15

system); *In re Bean*, 66 B.R. 454, 456-57 (Bankr. S.D. Colo. 1986) (same), *aff'd Bean v. Colorado*, 72 B.R. 503 (D. Colo. 1987). But the State reads too broadly the Court's admonition in *Kelly*. The Court in *Kelly* held that § 523(a)(7) excepts from discharge any condition a state criminal court imposes as part of a criminal sentence. *Id.* at 50. The Court's statements in *Kelly* were directed at restrictions on a State's ability to advance the penal, rehabilitative, and deterrent goals of its criminal justice system. *Kelly*, 479 U.S. at 360. These goals would be defeated if the bankruptcy court relieved a criminal of a fine, penalty or forfeiture imposed by a state court. Such a concern does not exist with respect to a surety's debt for forfeiture of a bond.[6]

### *Conclusion*

We hold that § 523(a)(7) excludes only those forfeitures imposed because of misconduct or wrongdoing by the debtor. This construction balances the equitable concerns underlying the Bankruptcy Code by providing the honest, but unfortunate debtor with a fresh start, while not permitting the bankruptcy courts to serve as a haven for wrongdoers. Hickman's debt arising from her contractual obligation on a bail bond does not represent the type of punitive or penal forfeiture rendered nondischargeable by §

---

[6] Arguably the State's penal, rehabilitative, and deterrent goals would be undermined if the debtor were the criminal defendant, but we do not address that question today.

16

523(a)(7).  Accordingly, we AFFIRM the judgment of the district court.