IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 24, 2008

Charles R. Fulbruge III
Clerk

No. 07-30262

In The Matter Of:   RANDALL MARK SCHAFFER

Debtor

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RANDALL MARK SCHAFFER

Appellant

v.

LOUISIANA STATE BOARD OF DENTISTRY

Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JOLLY, HIGGINBOTHAM, and PRADO, Circuit Judges.
PATRICK E. HIGGINBOTHAM, Circuit Judge:

The Louisiana State Board of Dentistry, a civil administrative board, sustained charges against Doctor Randall Mark Schaffer, a practicing dentist, revoking his dental license and assessing the costs of the proceeding. Although by statute the Board could assess a fine in addition to costs, it declined to do so. A parish court adopted the Board's decision and entered a judgment against the

dentist for the costs, who then filed for bankruptcy. The bankruptcy court held the costs to be nondischargeable, and the district court affirmed.

I

In 2000, the Louisiana State Board of Dentistry brought a disciplinary action against Randall Mark Schaffer, a licensed dentist. LA. REV. STAT. ANN. § 37:760 A.(4)(a)[1] then authorized the Board to appoint an examining committee to hear charges against a dentist, dental hygienist, or unlicensed person practicing in the dental profession, and LA. REV. STAT. ANN. §§ 37:780 B.(1),(2)[2] authorized assessment of costs against the dentist or hygienist charged in the proceeding. The latter statute had two paragraphs, both referring to the same costs. LA. REV. STAT. ANN. § 37:780 B.(1) provided,

> Should the committee after due hearing find that the charges filed against the licensee or the unlicensed person are sustained by the evidence, it may revoke, suspend, restrict, fine, place on probation, reprimand, or admonish, or any or all of the above, the licensed dentist or licensed dental hygienist. The board may levy an administrative fine and assess all costs of the committee, including but not limited to attorney fees, investigative fees, and stenographic costs against the unlicensed person, and may seek any and all equitable and injunctive relief allowable under the law.[3]

Section B.(2) provided,

> The fine shall not be less than five hundred dollars nor more than five thousand dollars for each offense. In addition, the unlicensed person, the licensed dentist, or licensed dental hygienist shall pay, not later than the thirtieth day after the day the decision is made by the committee, all costs of the committee proceedings, including but not limited to stenographer fees, attorney fees, investigative fees

---

[1] West 2000.

[2] West 2000.

[3] Emphasis added.

and expenses, and witness fees and expenses, and the per diem and expenses of the committee members. If, for any reason, the money portion of the committee's decision is not paid . . . within thirty days, then legal interest shall be charged and added thereto as calculated in Civil Code Article 2924(B), until said sum is paid in full.[4]

Following committee proceedings against Schaffer, the Board found that Schaffer had, inter alia, defrauded and deceived the public, acted contrary to prevailing acceptable dental standards, and exhibited dental incompetence. The Board issued a Revised Decision revoking Schaffer's license and assessing against Schaffer the costs of the proceedings, a total of $217,852.13. It did not impose an administrative fine as defined by § 780 B.(1); it did use the word "fine" in one portion of its decision, but that term referred to the assessed costs of the proceeding and not a "fine" as used in the statute. The Board required that

> Dr. Schaffer pay, not later than the thirtieth day after the decision is made by the Committee, all costs of the Committee proceedings, including, but not limited to, stenographer fees, attorneys' fees, investigative fees and expenses, and witness fees and expenses and the per diem and expenses of the Committee members. If, for any reason, the money portion of the Committee's decision is not paid by the respondent within thirty days, legal interest shall be charged and added to the money portion as calculated in Civil Code article 2924(B), which interest shall accrue until the sum is paid in full. Additionally, if respondent fails for any reason, including bankruptcy, to pay the entire amounts within thirty days of this decision becoming final, the Board shall not consider any reapplication for license by Dr. Schaffer for the period that the fine remains unpaid.

The Board's Hearing Committee issued a Revised Opinion revoking Schaffer's license and ordering him to pay for the expenses of the proceeding. The 24th Judicial District Court for the Parish of Jefferson incorporated the decision into its judgment, rendering the costs executory, and also ordered payment of future

---

[4] Emphasis added.

costs for interest that accrued from September 20, 2000. In August of 2005, Schaffer filed for Chapter 7 bankruptcy and named the Board as a creditor. After Schaffer filed for bankruptcy and the Board brought an adversary proceeding, the bankruptcy court granted Schaffer a discharge and closed the main case. The Board and Schaffer then filed cross-motions for summary judgment to determine the dischargeability of Schaffer's debt to the Board. The bankruptcy court denied Schaffer's motion and granted the Board's motion. That court held the costs nondischargeable pursuant to 11 U.S.C. § 523(a)(7), rendering a debt nondischargeable

> (7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty–
> (A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or
> (B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition.

Schaffer appealed to the district court. The district court affirmed.[5]

## II

"In reviewing cases originating in bankruptcy, we 'perform the same function, as did the district court: Fact findings of the bankruptcy court are reviewed under a clearly erroneous standard and issues of law are reviewed de novo.'"[6] A debt is not dischargeable in bankruptcy when the debt 1) is owed to a "governmental unit"; 2) is "a fine, penalty, or forfeiture"; and 3) is not "compensation for actual pecuniary loss."[7] Whether the costs that the Board

---

[5] Neither the bankruptcy court nor the district court addressed future costs; they are not at issue here.

[6] In re Soileau, 488 F.3d 302, 305 (5th Cir. 2007) (citing In re Berryman Prods. Inc., 159 F.3d 941, 943 (5th Cir. 1998)).

[7] 11 U.S.C. § 523(a)(7).

assessed against Schaffer are dischargeable presents a mixed question of fact and law that we review de novo. The parties agree that debt is owed to a "government unit;" they dispute whether the costs are a fine, penalty, or forfeiture, or actual compensation for pecuniary loss.

Schaffer argues that instead of assessing a fine, the Board revoked Schaffer's license and assessed costs. The Board argues that although the costs are not a fine, they are a penalty because the Board has discretion to assess costs only on a finding of "guilty" in the administrative proceeding. In other words, the three measures available to the Board that arise from a finding of wrongdoing are all part of the penalty that the Board could have assessed against Schaffer. The Board argues that while it chose only two measures of the penalty – the costs and license revocation – the costs are punitive. At oral argument, the Board cited to our holding in In re Hickman that the word "penalty" is "'an elastic term'" and that "[c]entral to the definition of penalty is . . . 'punishment imposed on a wrongdoer.'"[8]

The district court, "in '[examining] the true nature of the debt incurred'" by the Board's assessment of costs, held that the

> Board assessed costs against Dr. Schaffer because of his misconduct and/or wrongdoing. As such, the assessed costs constitute a penalty for wrongdoing, rather than the type of debt resulting from a typical debtor-creditor relationship because the Board did not extend credit to Schaffer. Further, while the assessed costs may result in reimbursement to the Board for expenses incurred, it cannot be said, after reading the Board's 32-page Revised Decision, that compensation was the primary objective of the board.

---

[8] 260 F.3d 400, 403 (5th Cir. 2001) (quoting BLACK'S LAW DICTIONARY 1133 (6th ed. 1990); BLACK'S LAW DICTIONARY 1153 (7th ed. 1999)).

We first look to the text of the statute,[9] and then to the purpose of the costs assessed. Because § 523(a)(7) is ambiguous,[10] "'we must not be guided by a single sentence or member of a sentence, but . . . [by] the provisions of the whole law, and to its object and policy.'"[11]

Under the text of the statute, the costs assessed are not a fine, penalty, or forfeiture. The statute provides, "In addition to the power and duties granted in Subparagraph (a) of this Paragraph, the board may, in its discretion, impose a fine against any person licensed under this Chapter."[12] The statute also plainly separates assessment of costs from a punitive fine by permitting the Board to "levy an administrative fine and assess all costs of the committee."[13] The Board chose to do the latter by assessing costs. The district court recognized this in finding that the "Committee did not assess a 'fine' against Schaffer within the meaning of LA. REV. STAT. ANN. 37:780(B)(2)," but concluded that its purpose was to assess a punitive fine.

Although the statute only permits assessment of costs if the Board's charges against a dentist are sustained, it does not follow that the costs are a penalty under § 523. Even where a debt bears a label that fits within § 523(a)(7)'s definition of dischargeable debts, we have looked to the nature and purpose of the debt and declined to declare it nondischargeable. In Hickman, a

---

[9] See, e.g., Pa. Dep't of Pub. Welfare v. Davenport, 495 U.S. 552, 565 (1993) (Blackmun, J., dissenting) ("When analyzing a bankruptcy statute, the Court, of course, looks to its plain language."); Kelly v. Robinson, 479 U.S. 36, 43 (1986) (holding that "the 'starting point in every case involving construction of a statute is the language itself'" (quoting Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 756 (1975) (Powell, J., concurring))).

[10] Kelly, 479 U.S. at 48 n.9.

[11] Hickman, 260 F.3d at 403, 405 (quoting Kelly, 479 U.S. at 43, and holding that the mere label of a bail bond as "forfeited" does not place the money owed under § 523(a)(7)'s definition of "forfeiture").

[12] LA. REV. STAT. ANN. § 37:760 A.(4)(b) (emphasis added).

[13] LA. REV. STAT. ANN. § 37:780 B.(1) (emphasis added).

bail bondswoman filed for bankruptcy when she could not pay the bonds entered against her by the court for defendants' failure to appear – bonds that were labeled as "forfeiture" debt. We held that the debt did not fall under § 523's definition of nondischargeable debt, stating,

> Construing forfeiture in light of the accompanying terms in § 523(a)(7), § 523(a) as a whole, and the basic policy and object of the Bankruptcy Code, we hold that § 523(a)(7) excludes from discharge only those forfeitures imposed because of misconduct or wrongdoing by the debtor. Hickman's debt arising from her failure to fulfill her contractual obligation to the State as a surety on a criminal bail bond is not the sort of punitive or penal forfeiture rendered nondischargeable by § 523(a)(7).[14]

That said, we also explained in Hickman that

> [t]he definitions of penalty and fine reflect the traditional understanding of the these terms as punitive or penal sanctions imposed for some form of wrongdoing. Their inclusion in § 523(a)(7) implies that Congress intended to limit the section's application to forfeitures imposed upon a wrongdoing debtor.[15]

Furthermore, the Hearing Committee's language in the Revised Decision indicates that it may have intended for the "costs" to be punitive; the Board linked its revocation of Schaffer's license – a punitive measure – directly to his payment of the costs, ordering that

> if respondent fails for any reason, including bankruptcy, to pay the entire amounts within thirty days of this decision becoming final, the Board shall not consider any reapplication for license by Dr. Schaffer for the period that the fine remains unpaid.

Read another way, however, the language suggests that the Board anticipated that Schaffer's costs might be discharged in bankruptcy.

---

[14] 260 F.3d at 401.

[15] Id. at 404.

On balance, we find that the plain text of the Louisiana statute presides. In permitting the assessment of costs in addition to a fine, a plain reading of the text suggests that the costs are not a fine, penalty, or forfeiture under § 523(a)(7). The Board could have assessed a fine under the statute's express language but did not do so. Finding the Board's assessment of costs to be punitive forces it into the category of the "fine" that the Board chose not to levy. But all of these "on the other hand" possibilities make plain the want of sure footing, and that is determinative here. In Hickman we emphasized that "[c]onsistent with the Code's basic purpose of 'relieving the honest debtor from the weight of oppressive indebtedness and permitting him to start afresh,' exceptions to discharge are to be construed narrowly."[16] Reading the assessed costs as a fine or penalty under § 523, in light of the Louisiana statute's express provision for a fine, is not a narrow reading of the bankruptcy code.

It is true that criminal and civil cases in the Supreme Court, other circuit courts, and bankruptcy courts have held that certain costs not labeled as a "fine" or penalty nevertheless fit within § 523's definition of fines or penalties that are nondischargeable debts. We begin with the Supreme Court's decision in Kelly, a criminal case, and conclude that the reasoning for nondischargeability in criminal cases does not wholly apply to civil administrative decisions. We then look to the civil cases. Although several cases in other circuits hold that the goal of preventing the discharge of costs associated with criminal activity should apply equally in the civil context, these cases differ substantially from the facts here. None of those cases involved a unitary statute with language providing for the imposition of a fine and costs.

In Kelly, a Connecticut statute allowed courts to order a defendant to "'make restitution of the fruits of his offense or make restitution . . . for the loss

---

[16] 260 F.3d at 404 (quoting Williams v. U.S. Fid. & Guar. Co., 236 U.S. 549, 554-55 (1915)) (emphasis added) (citation omitted).

or damage caused thereby . . . ."[17] The Connecticut Superior Court ordered that a defendant convicted of larceny make restitution to the state probation office.[18] The Court determined that when Congress enacted the new bankruptcy code,[19] it did so "against the background of an established judicial exception to discharge for criminal sentences, including restitution orders,"[20] and that in writing the bankruptcy code, Congress did not abrogate this exception to discharge. The Court also expressed comity concerns associated with federal discharge laws, finding that "[w]e do not think Congress lightly would limit the rehabilitative and deterrent options available to state criminal judges."[21] Furthermore, the Court found, "On its face [§ 523(a)(7)] creates a broad exception [to dischargeability] for all penal sanctions, whether they be denominated fines, penalties, or forfeitures."[22] Because Kelly's reasoning rests on a constitutionally-footed hesitation to interfere in state criminal matters, its aptness for civil proceedings is dubious. As we held in Hickman,

> the Court [in Kelly] did not decide § 523(a)(7)'s applicability to civil, non-penal debts. Thus, while the Court's analysis and approach in Kelly are instructive, its holding does not compel the result that debts incurred in . . . [a civil] capacity . . . are dischargeable.[23]

We turn to the more relevant civil cases.

---

[17] 479 U.S. at 39 n.1 (1985) (citing CONN. GEN. STAT. § 53a-30 (1985)).

[18] Id. at 38-39.

[19] Title 11 replaced the Bankruptcy Act of 1898, ch. 541, 30 Stat. 544. Kelly, 479 U.S. at 44. Under the old act, "most courts refused to allow a discharge in bankruptcy to affect the judgment of a state criminal court." Id. at 45.

[20] Kelly, 479 U.S. at 46.

[21] Id. at 49.

[22] Id. at 51.

[23] 260 F.3d at 403.

In In re Cillo,[24] a bankruptcy court held that a Florida Supreme Court judgment requiring an attorney to pay the state Bar for the costs of its disciplinary proceeding against him[25] was not a judgment for "actual pecuniary loss" and was nondischargeable under § 523(a)(7). The bankruptcy court rested on its reasoning in an earlier criminal case, In re Garvin,[26] and held,

> the costs of a disciplinary proceeding assessed by the Florida Supreme Court against the Debtor whose license to practice law had been suspended, were in the nature of a "fine, penalty or forfeiture" payable to or for the benefit of a governmental unit, and is not compensation for actual pecuniary loss. Even though Garvin arose in the context of criminal proceedings, the ultimate goal of both criminal and attorney disciplinary proceedings is to protect the public. Sanctions imposed against the offender, whether as part of an attorney disciplinary proceeding or a criminal proceeding, promote the state's penal and rehabilitative interests.[27]

Because the Bar had not sought restitution or fines in court, the bankruptcy court reasonably interpreted the Florida Supreme Court's requirement that the attorney pay the costs of the case as an alternative means of sanctioning the attorney.

In In re Haberman, the Board of Attorneys Professional Responsibility ("BAPR") for Wisconsin, "an arm of the Wisconsin Supreme Court . . . primarily responsible for investigating complaints against members of the Bar and making recommendations to the Wisconsin Supreme Court regarding appropriate

---

[24] 159 B.R. 340 (Bankr. M.D. Fla. 1993).

[25] See The Florida Bar v. Cillo, 606 So. 2d 1161, 1163 (Fla. 1992) (per curiam) ("Judgment for costs is hereby entered against Joseph P. Cillo in the amount of $ 8,132.74, for which sum let execution issue.").

[26] 84 B.R. 824 (Bankr. M.D. Fla. 1988).

[27] 159 B.R. at 343.

disciplinary actions,"[28] brought an action in the supreme court against Haberman. The supreme court ordered him to pay costs to the BAPR. The bankruptcy court held these costs to be nondischargeable under § 523(a)(7), reasoning that

> the ultimate goal of both criminal proceedings and attorney disciplinary proceedings is to protect the public. Sanctions imposed against an offender, whether as part of attorney disciplinary proceedings or criminal proceedings, promote the state's penal and rehabilitative interests.[29]

The court also relied on that fact that "Wisconsin case law as developed reflects a policy of treating assessed costs as penal in nature," and that the rule providing for assessment of costs against disciplined attorneys was "primarily intended to deter attorneys from engaging in improper conduct and to convey the message to attorneys and to the public alike that the practice of law is closely scrutinized."[30] Most relevantly, the court concluded,

> The words 'misconduct' and 'types of discipline' as used in SCR 21:06 [the rule permitting cost assessment, license suspension, and other remedies] indicate that the purpose of the rule is more akin to punishment than to compensation for actual pecuniary loss.[31]

In Haberman, the rule providing for assessment of costs listed costs as a "type[] of discipline." Specifically, that rule provided,

> Misconduct is grounds for one or more of the following types of discipline:
>     (1) Revocation of license to practice law (disbarment).

---

[28] 137 B.R. 292, 294 (Bankr. E.D. Wisc. 1992).

[29] Id. at 296.

[30] Id. at 295.

[31] Id.

(2) Suspension of license to practice law, including the imposition of conditions upon seeking reinstatement of the license.
(3) Monetary payment.
(4) Public or private reprimand.
(5) Conditions upon the continued practice of law.[32]

In contrast, the Louisiana statute does not define assessment of costs as a form of "discipline," and it provides for assessment of an "administrative fine" and/or costs, rather than a more general category of "monetary payment." The provisions for a "fine" and "costs" in the Louisiana statute establish a meaningful difference between the Board's punitive versus loss-based options for monetary measures. The unique text of the Louisiana statute compels us to reach a result that differs from holdings in other circuits.

Our holding that the Board's costs are not a fine, penalty, or forfeiture is buttressed by our conclusion that the costs assessed are "compensation for actual pecuniary loss" and do not fall within § 523(a)(7)'s definition of nondischargeable fines.

In the criminal context, costs assessed as a result of proceedings in the form of restitution or other fees are not "compensation for actual pecuniary loss." Kelly held that § 523(a)(7) "protects traditional criminal fines" and costs imposed in the form of restitution from discharge.[33] It concluded,

> Because criminal proceedings focus on the State's interests in rehabilitation and punishment, rather than the victim's desire for compensation, we conclude that restitution orders imposed in such proceedings operate "for the benefit of" the State. Similarly, they are not assessed "for . . . compensation" of the victim. The sentence following a criminal conviction necessarily considers the penal and

---

[32] Id. (quoting WIS. SUP. CT. R. 21.06).

[33] 479 U.S. at 51-52.

rehabilitative interests of the State. Those interests are sufficient to place restitution orders within the meaning of § 523(a)(7).[34]

Justice Marshall disagreed, pointing out that the relevant statute allowed the court to "'make restitution of the fruits of his offense or make restitution, in an amount he can afford to pay or provide in a suitable manner, for the loss or damage caused thereby. . . .'"[35] He concluded that the restitution in Kelly was "compensation for actual pecuniary loss," as it tied "the amount of restitution to the amount of actual damage sustained by the victim."[36]

In re Zarzynski followed a line of reasoning similar to the Kelly majority. A county circuit court imposed a sentence under Wisconsin law requiring the convicted criminal to pay for the costs of his prosecution[37] under a statute that provided,

> (1) the costs taxable against the defendant shall consist of the following items . . . :
>
> (a) The necessary disbursements and fees of officers allowed by law and incurred in connection with the arrest, preliminary examination and trial of the defendant, including . . . the fees and disbursements of the agent appointed to return a defendant . . .
>
> (b) Fees and travel allowance of witnesses for the state at the preliminary examination and the trial.
>
> (c) Fees and disbursements allowed by the court to expert witnesses . . .

---

[34] Id. at 53.

[35] Id. at 55 (quoting CONN. GEN. STAT. § 53a-30(a)(4) (1985) (emphasis added)) (Marshall, J., dissenting).

[36] Id.

[37] 771 F.2d 304, 305 (7th Cir. 1985).

(d) Fees and travel allowance of witnesses for the defense incurred by the county . . . at the preliminary hearing and the trial.

(e) Attorneys' fees . . . .[38]

The court concluded that the costs were nondischargeable under § 523(a)(7), holding,

> what a county expends in a criminal prosecution in the fulfillment of its statutory police power responsibilities is not "an actual pecuniary loss" to the county. It is, of course, an expenditure by the government, part of the expense of governing, but the county did not undertake the expense expecting to create a debtor-creditor relationship. In this case, the county did its duty to protect the public by convicting and punishing a law violator. There is no county pecuniary loss when the county functions as it should in the furtherance of its public responsibilities. Nor does the fact that the costs are based on what the county expended in the criminal trial convert the costs into "compensation for actual pecuniary loss." The costs can be viewed a [sic] part of the penalty even though it is a penalty measured by the extent of certain county expenditures for the trial.[39]

The Seventh Circuit reached this holding despite the costs' purpose of repaying the county for the expenses of prosecution, concluding,

> the fact that the costs are based on what the county expended in the criminal trial [does not] convert the costs into 'compensation for actual pecuniary loss.' The costs can be viewed a part of the penalty even though it is a penalty measured by the extent of certain county expenditures for the trial.[40]

---

[38] Id. at 305 n.2 (citing WIS. STAT. ANN. § 976.06(1) (West 1985)).

[39] Id. at 306.

[40] Id.

The debtor argued that the court could have imposed a fine under another Wisconsin statute but assessed costs instead,[41] and that this indicated that the costs did not fit within § 523(a)(7). The court was not persuaded. However, unlike the present case, the options for both a fine and costs or either of them were not available within the same statute in Zarzynski. More importantly, Zarzynski, like Kelly, only applies to debts arising from criminal proceedings. The Zarzynski court adopted the bankruptcy court's reasoning that "the obligation of a debtor to pay the costs of a criminal prosecution is imposed as part of the sentence to punish him for violation of the criminal laws rather than to compensate [the county] for actual pecuniary loss."[42]

Although § 523(a)(7) applies equally to criminal and civil penalties and fines,[43] the cases holding that costs assessed in criminal proceedings are nondischargeable under the statute rely on federal courts' comity concerns with respect to state court criminal judgments, an issue distinct from the applicability of § 523(a)(7)'s language to the costs assessed by the Board. Schaffer asserts that the criminal-civil distinction is an important one, arguing that "[t]he Kelly decision made no reference to civil proceedings such as the administrative action brought against Schaffer by the Board in the instant case, and, in fact, cited the bankruptcy judge's language [about the traditional duties of states in enforcing criminal duties]."[44] Indeed, few circuit courts have addressed the dischargeability of costs assessed in civil proceedings.

---

[41] Id.

[42] Id. at 305 (emphasis added); see also id. at 306 (adopting the bankruptcy court's and district court's reasoning).

[43] Davenport, 495 U.S. at 562.

[44] Schaffer's Brief at 7-8.

In Matter of Towers,[45] Illinois brought and won a civil fraud case against the owner of a financial services corporation. The state court required Towers to pay a civil penalty, reimbursement for investigative costs, and restitution to his customers.[46] The Seventh Circuit held that the restitution costs were not subject to § 523(a)(7)'s nondischargeability provisions, finding that Kelly's "animating concern was limited to criminal cases"[47] and that Kelly's "principal interpretive tool" was "the proposition that courts are 'reluctant to interpret federal bankruptcy statutes to remit state criminal judgments.'"[48] The Seventh Circuit's conclusion that the civil restitution debt was dischargeable, however, rested on the fact that the debt, if paid, would go to the fraud victims, not the government, and was thus not "payable to and for the benefit of a governmental unit,"[49] concluding,

> Civil restitution under the Illinois Consumer Fraud and Deceptive Business Practices Act is payable to, but not for the benefit of, the Attorney General of Illinois. It is therefore not protected from discharge by 11 U.S.C. § 523(a)(7).[50]

In this case, the costs assessed will go to a government entity – the Louisiana Board of Dentistry. Any fine assessed would have also gone to the Board.[51] Yet there is a crucial distinction. The parish court, in entering the Board's order

---

[45] 162 F.3d 952 (7th Cir. 1998).

[46] Id. at 953.

[47] Id. at 954.

[48] Id. (quoting Kelly, 479 U.S. at 44).

[49] Id. at 955.

[50] Id. at 956.

[51] The Board explained at oral argument that Board funding comes from dentists' licensing fees and that fines and costs assessed in the Board's proceedings go to this same fund.

revoking Schaffer's license and assessing costs, did not order restitution to the Board or to anyone else. It ordered the payment of costs for the expenses of the civil administrative proceeding – the hotel and meal expenses of the committee appointed by the Board to hear Schaffer's case, among other expenses. The costs assessed are, at their core, "compensation for actual pecuniary loss" – in this case, the losses to the Board caused by the cost of the proceeding. It does not appear to us, looking to the language of the Louisiana statute and the Board's order, that the Board assessed costs "to promote law enforcement by deterrence as well as by compensation."[52] Rather, it assessed costs to repay some of the Boards' expenses incurred in the proceeding, such as those listed in the statute – stenographers' and attorneys' and investigative fees, as well as the daily expenses of the members of the committee appointed by the Board to hear this matter.[53]

The fact that the Board regularly incurs these expenses in fulfilling its duties, whether its charges are sustained or not, fails to persuade us that the statute providing for repayment of some of the costs is not for repayment of "loss." Although other circuits, such as the Seventh Circuit in Zarzynski and the Fourth Circuit in United States Department of Housing & Urban Development v. Cost Control Marketing and Sales Management, have held that costs that reimburse a government entity are not compensation for actual pecuniary loss where the costs are a penalty,[54] we are not persuaded that the costs assessed by

---

[52] 162 F.3d at 955 ("As Kelly observed, restitution usually is not compensation for the government's pecuniary loss. Governments seek restitution to promote law enforcement by deterrence as well as by compensation, and Illinois was not a victim of Towers' fraud except to the extent criminal activity induced the state to expend part of its law-enforcement budget.").

[53] LA. REV. STAT. ANN. § 37:780.

[54] 163 F.3d at 955 ("It is easy enough to call restitution under the Illinois Consumer Fraud and Deceptive Business Practices Act 'a fine, penalty, or forfeiture.' The state enforces its laws for the benefit of all citizens, not just the victims of a given flimflam. The $ 50,000

the Board are a penalty, as we have discussed above. Our journey has not yielded a compelling characterization of the costs taxed, but that outcome does answer our larger inquiry as to whether they were dischargeable – exceptions to discharge are to be read narrowly, and in doing so we cannot sustain the district court's holding.

The district court erred in holding that the costs assessed by the Board were a "fine, penalty, or forfeiture" and were not "actual compensation for pecuniary loss" under § 523(a)(7). We therefore REVERSE and remand for proceedings consistent with this opinion.

---

penalty unquestionably satisfies § 523(a)(7); if instead of ordering restitution the state court had selected a 'penalty' . . . (the harm caused by the wrongful acts, plus an additional fine), this larger sum also would have been covered. Breaking an exaction into components does not make it less a fine, penalty, or forfeiture."); 64 F.3d 920, 928 n.13 (4th Cir. 1995) ("Even where a debt is intended to help defray the expense of government, it may not be dischargeable if its primary purpose is penal." (emphasis added)).