REAVLEY, Circuit Judge:
Various vendors, contractors, and subcontractors provided materials and services in connection with an offshore mineral lease. By way of the Louisiana Oil Well Lien Act, the service providers then secured liens on the lessee's operating interest. And, in the lessee's subsequent bankruptcy proceeding, the service providers *124 intervened, seeking to enforce their statutory liens on overriding royalty interests conveyed by the lessee to a third party. The district court dismissed the service providers' complaints, concluding that the very statute that created the liens extinguished them via a safe-harbor provision. We affirm.
I. BACKGROUND
ATP Oil and Gas Corporation leased from the United States an operating interest-the right to explore and drill for minerals-on federal lands located on the Outer Continental Shelf off the coast of Louisiana. Thereafter, various service providers (collectively, "the M& M Intervenors") furnished labor and materials to ATP in connection with its oil-and-gas operation. Under the Louisiana Oil Well Lien Act ("LOWLA"), the M& M Intervenors thereby secured liens (also called "privileges") on ATP's operating interest, each lien attaching upon the commencement of labor. See La. Rev. Stat. §§ 9:4863(A)(1), 9:4864(A)(1). The M& M Intervenors timely recorded their liens.
ATP later sold "term overriding royalty interests" to OHA Investment Corporation in three installments. ATP conveyed overriding royalties in exchange for $25 million in June 2011, $15 million in December 2011, and $25 million in July 2012. These overriding royalties entitled OHA to a cost-free percentage "of all Hydrocarbons produced, saved, and sold from or attributable" to the mineral lease and, relatedly, to satisfaction "out of the Subject Hydrocarbons and the proceeds thereof" until OHA realized a certain sum.[1]
In August 2012, ATP filed a voluntary Chapter 11 petition for bankruptcy relief (later converted to a Chapter 7 proceeding). OHA then commenced an adversary proceeding, seeking a declaratory judgment that (1) OHA, not the bankruptcy estate, owned the overriding royalties and (2) the royalty conveyance was not an executory contract subject to rejection. The M& M Intervenors, still unpaid, intervened and sought to enforce their statutory liens against OHA's overriding royalties.
The bankruptcy court bifurcated the proceeding into two phases: the first would decide whether OHA owned the overriding royalties and whether the conveyances were executory contracts, and the second would decide the lien-related questions. The parties resolved the first phase by agreed judgment, and OHA moved to dismiss the M& M Intervenors' complaints under Federal Rule of Civil Procedure 12(b)(6). In short, OHA argued that LOWLA liens could not attach to overriding royalties and alternatively, even if the liens could attach, they were extinguished by LOWLA's safe harbor for third-party purchasers of hydrocarbons.
The bankruptcy judge acknowledged first that LOWLA liens can attach to four types of property interests:
*125 1) "The operating interest under which the operations giving rise to the claimant's privilege are conducted";
2) "Drilling or other rig located at the well site of the operating interest";
3) "The interest of the operator and participating lessee in hydrocarbons produced from the operating interest and the interest of a non-participating lessee in hydrocarbons produced from that part of his operating interest subject to the privilege"; and
4) "The proceeds received by, and the obligations owed to, a lessee from the disposition of hydrocarbons subject to the privilege."
La. Rev. Stat. § 9:4863(A)(1)-(4). The bankruptcy judge then determined the M& M Intervenors' liens attached first to ATP's operating interest and second to OHA's overriding royalty interests, relying on the time-honored principle that a seller can convey no better title than it owns. In so deciding, the bankruptcy judge rejected OHA's argument that the following LOWLA provision categorically bars liens on overriding royalties: "The privilege does not affect ... [t]hat part of hydrocarbons produced from an operating interest that is owned by a lessor, sublessor, overriding royalty owner, or other person who is not a lessee of the operating interest." Id. § 9:4863(C)(1). The judge read that exclusionary provision to apply only to overriding royalties that preexisted the lien's inception, not those conveyed after attachment.
Next, the bankruptcy judge turned to LOWLA's safe harbor:
The privilege is extinguished as to hydrocarbons that are sold or otherwise transferred in a bona fide onerous transaction by the lessee or other person who severed or owned them at severance if the transferee pays for them before he is notified of the privilege by the claimant.
Id. § 9:4869(A)(1)(a). The bankruptcy judge concluded that OHA's purchase fell within the confines of the safe harbor, meaning the M& M Intervenors' liens were extinguished unless they provided pre-purchase notice to OHA.
In turn, the bankruptcy judge permitted the M& M Intervenors to amend their complaints to address the notice issue, and the judge entertained another motion to dismiss from OHA. After recognizing that LOWLA does not specify the type of notice required, the bankruptcy judge concluded that the statute asks for actual notice and that the M& M Intervenors' amended complaints made no allegation that they provided such notice. As a consequence, the bankruptcy judge recommended that OHA's motion to dismiss be granted. The district court agreed, echoing the bankruptcy judge's findings and dismissing the M& M Intervenors' complaints.[2]
The M& M Intervenors appealed, arguing that OHA's royalty purchase fell outside LOWLA's safe harbor and thus imposed no notice requirement. OHA cross-appealed, arguing conditionally that-should this court find LOWLA's safe harbor inapplicable-the district court erred by concluding that the liens could attach to overriding royalties in the first place.
II. STANDARD OF REVIEW
We review a dismissal under Federal Rule of Civil Procedure 12(b)(6)de novo , "accepting all well-pleaded facts *126 as true and viewing those facts in the light most favorable to the plaintiff." Bustos v. Martini Club, Inc. , 599 F.3d 458, 461 (5th Cir. 2010) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ).
III. DISCUSSION
The Outer Continental Shelf Lands Act governs this dispute and calls for the application of federal law. See Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co. , 671 F.3d 512, 517 (5th Cir. 2012) (per curiam). And, " '[t]o the extent that they are applicable and not inconsistent with [federal law],' the laws of the adjacent states are the 'law[s] of the United States' " on the Outer Continental Shelf. Id. (alterations in original) (quoting 43 U.S.C. § 1333(a)(2)(A) ). The parties agree that Louisiana is that adjacent state, and we therefore apply Louisiana substantive law, namely LOWLA, as a federal surrogate. See index="10" url="https://cite.case.law/citations/?q=43%20U.S.C.%20%C2%A7%201333">id.
Conceptually, this dispute raises three questions: (1) Could the M& M Intervenors' liens attach to OHA's overriding royalties in the first place?; (2) If so, does LOWLA's safe harbor cover OHA's purchase of those overriding royalties?; and (3) If so, did the M& M Intervenors fail to provide OHA with the pre-purchase notice necessary to avoid the safe harbor's extinguishing effect? The district court answered all three questions in the affirmative. Yet, we need only tackle the second question; we can assume for argument's sake that the M& M Intervenors' liens could attach to overriding royalties, and the M& M Intervenors effectively concede they did not provide OHA with pre-purchase notice (and so we need not opine on the type of notice LOWLA requires).[3] Thus, if OHA's purchase of the overriding royalties falls within LOWLA's safe harbor, the district court's judgment must be affirmed.
The safe-harbor question is one of statutory interpretation: Was OHA's purchase of the overriding royalties a purchase of "hydrocarbons that are sold or otherwise transferred in a bona fide onerous transaction by the lessee or other person who severed or owned them at severance"? La. Rev. Stat. § 9:4869(A)(1)(a). Certain undisputed components of the safe harbor-the royalties were "sold," the transaction was "bona fide," and the seller (ATP) was a "lessee"-distill the question even further: Was OHA a purchaser of "hydrocarbons"?[4]
To answer that question, of course, we must examine LOWLA's text. See Henrikson v. Guzik , 249 F.3d 395, 398 (5th Cir. 2001) ("When interpreting a statute, the starting point is the statute's text."). But, because LOWLA does not exhaustively define all the relevant terms, the parties draw heavily on a background of substantive Louisiana oil-and-gas law. Before parsing the text ourselves, we will clear up *127 a couple misconceptions about the mineral interests at stake.
A. Hydrocarbons in the Ground
Since this case involves a pre-severance conveyance, the M& M Intervenors spill much ink on Louisiana's approach to hydrocarbons still in the ground. In the words of the M& M Intervenors, "[w]ell-settled Louisiana law [says] that one cannot own hydrocarbons until they are severed from the ground." And they are quite right; in Louisiana, underground oil and gas are "fugitive minerals ... at large beneath the surface of the earth [and] are not ... the subject of private ownership, as defined in the Civil Code." Frost-Johnson Lumber Co. v. Salling's Heirs , 150 La. 756, 91 So. 207, 212 (1920). As a result, ATP could not possibly convey (and OHA could not possibly purchase) outright ownership of underground hydrocarbons.
Yet, this principle by no means forbids a landowner or lessee from conveying pre-extraction mineral interests. Apart from outright ownership of the fugacious hydrocarbons, there remains the "right to sever and appropriate them, which right, of course, [the landowner] may cede to another." Allies Oil Co. v. Ayers , 152 La. 19, 92 So. 720, 720 (1922). It is that right-the right to explore for and appropriate hydrocarbons produced-that the United States granted to ATP. And it is from that right that OHA's overriding royalties owe their existence.
B. Overriding Royalties
So, what is an overriding royalty interest? LOWLA itself supplies no definition for the term, so we look to the term's "commonly understood legal meaning." Martinez v. Mukasey , 519 F.3d 532, 540 (5th Cir. 2008). In the words of a leading treatise, "[a]n overriding royalty is, first and foremost, a royalty interest. In other words, it is an interest in oil and gas produced at the surface, free of the expense of production." Williams & Meyers, Oil and Gas Law § 418.1 (2017). Louisiana law, too, classifies an overriding royalty as the "right to receive and collect a fraction or a percentage of the production of minerals ... free of drilling and production costs." Total E & P USA Inc. v. Kerr-McGee Oil and Gas Corp. , 719 F.3d 424, 434 (5th Cir. 2013). Moreover, an overriding royalty is a "real right," albeit a nonpossessory one. Id. ; see also Williams & Meyers, Oil and Gas Law § 418.1.
The M& M Intervenors have a materially different understanding, arguing that "ATP conveyed to OHA an interest in the proceeds or revenue derived from the hydrocarbons that were to be severed and sold by ATP in the future." (emphasis added). In so suggesting, the M& M Intervenors misapprehend the nature of an overriding royalty by focusing not on the property interest itself but on the form of subsequent royalty payments. Royalty payments can take the form of cash (out of proceeds of future hydrocarbon sales) or can be "in kind from the [hydrocarbons] lifted from the wells." E.g. , Af-Cap Inc. v. Republic of Congo , 383 F.3d 361, 364 (5th Cir. 2004). The mere fact that OHA was to be paid in one form and not the other says nothing of the nature of its underlying property interest; an overriding royalty is, again, an "interest in oil and gas produced at the surface." Williams & Meyers, Oil and Gas Law § 418.1. The language of OHA's purchase agreements makes this all the more clear. The agreements conveyed an interest in "Hydrocarbons produced" and simultaneously vested ATP with the authority to market and sell "all Subject Hydrocarbons"-including OHA's share. Thus, OHA purchased much more than a mere interest in proceeds; it purchased an *128 interest in the to-be-produced hydrocarbons themselves.
C. The Safe Harbor
Clarifying OHA's overriding royalty as an interest in hydrocarbon production is only half the battle, however, for we must still evaluate whether such an interest constitutes a purchase of "hydrocarbons" in the lingo of LOWLA. The gist of the parties' disagreement is this: OHA argues that the term "hydrocarbons" includes an interest in shares of hydrocarbon production, whereas the M& M Intervenors argue the term refers only to those already-severed hydrocarbons subject to outright, personal ownership.
The first place to look is LOWLA's definition of the term "hydrocarbons": "oil and gas occurring naturally in the earth and any other valuable liquid or gaseous substance found and produced in association with them." La. Rev. Stat. § 9:4861(2). On its face, this definition casts some doubt on the M& M Intervenors' position, for it covers both fugacious minerals still in the earth and the hydrocarbons produced therefrom. The M& M Intervenors respond by pointing to the safe harbor's description of the seller-"the lessee or other person who severed or owned them at severance." La. Rev. Stat. § 9:4869(A)(1)(a). This qualifier, the M& M Intervenors say, indicates that LOWLA speaks only in terms of already-severed hydrocarbons. However, the "who severed or owned them" clause qualifies the nearest reasonable antecedent-the "other person"-but it does not so constrain the more remote antecedent-the "lessee." See Barnhart v. Thomas , 540 U.S. 20, 26, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003) ("[A] limiting clause or phrase ... should ordinarily be read as modifying only the noun or phrase that it immediately follows...."). Thus, when we have a lessee-seller (as we do here), the M& M Intervenors' purported textual limitation is inapplicable and does not narrow the safe harbor to post-severance purchases.
Still, the above discussion only gets us so far because it leaves unanswered whether the purchase of an interest in hydrocarbon production is itself the purchase of "hydrocarbons" in LOWLA's eyes. LOWLA's text, read as a whole, confirms that it is. First, it is important to consider precisely what LOWLA's safe harbor aims to extinguish. The safe-harbor provision, by its own introductory terms, extinguishes the lien "established by [ section] 9:4863(A)(3)"-that is, the lien attached to an "interest ... in hydrocarbons produced from the operating interest." La. Rev. Stat. §§ 9:4863(A)(3), 9:4869(A). By way of this incorporation, the safe harbor decidedly encompasses interests in hydrocarbon production, and OHA's overriding royalties fit squarely within that category.
Elsewhere in LOWLA's text, the statute again indicates that "hydrocarbons" refers to more than just severed personalty. Specifically, LOWLA identifies a couple items that "[t]he privilege does not affect," including, "[t]hat part of hydrocarbons produced from an operating interest that is owned by a lessor, sublessor, overriding royalty owner, or other person who is not a lessee of the operating interest." Id. § 9:4863(C)(1). Further simplified (in LOWLA's terminology), "part of hydrocarbons produced" can indeed be "owned" by an "overriding royalty owner."[5] Id. By linking the two terms, LOWLA thus confirms *129 the district court's reading: A purchase of overriding royalties is a purchase of "hydrocarbons" as far as the statute is concerned.[6]
The M& M Intervenors suggest our construction of the statute is problematic because it is impossible to identify overriding-royalty purchasers and give them notice in the first instance. OHA responds that our result is necessary to protect royalty purchasers from the alleged hardships of silent encumbrances. Having determined that OHA's purchase fits plainly within the text of LOWLA's safe harbor, we simply have no occasion to resolve a lively debate on the feasibility and relative worth of pre-purchase notice. See Asadi v. G.E. Energy (USA), L.L.C. , 720 F.3d 620, 622 (5th Cir. 2013) ("If the statutory text is unambiguous, our inquiry begins and ends with the text.").
To summarize, "[w]hile LOWLA may not be a model of clarity," we are nevertheless confident that its safe harbor encompasses OHA's purchase of overriding royalties. Cutting Underwater Technologies , 671 F.3d at 523 (internal quotation marks omitted). As a consequence, the M& M Intervenors' failure to provide pre-purchase notice renders their liens extinguished. The district court was correct in its dismissal.
AFFIRMED.

The parties and opinion below employ the terms "overriding royalty" and "production payment" interchangeably to refer to the interest conveyed. Those terms are substantially identical with respect to the nature of the property interest they describe; they differ only in duration-an overriding royalty persists as long as the operating interest does, whereas a production payment may terminate when the grantee realizes a specified sum from the grantor-lessee. See Williams & Meyers, Oil and Gas Law § 422.3 (2017). Although OHA's purchase agreement itself labels the interest as an overriding royalty, the conveyance was technically that of a production payment. Nonetheless, because this appeal hinges on the character of the interest conveyed and not on its duration, the terms are indeed interchangeable for our purposes, and we will use "overriding royalty" for consistency's sake.

The district court's reasoning differed only on the notice issue. Because the M& M Intervenors failed to allege notice "by the claimant," the district court found it unnecessary to determine whether LOWLA mandates actual notice.

Moreover, M& M waived any suggestion that it provided adequate notice because it did not so argue in its brief. See Robinson v. Guar. Trust Life Ins. Co. , 389 F.3d 475, 481 n.3 (5th Cir. 2004) (explaining that failure to adequately "brief an issue on appeal constitutes waiver of that argument").

LOWLA defines "lessee" as "a person who owns an operating interest." La. Rev. Stat. § 9:4861(6).

At risk of appearing inconsistent with our previous discussion, we note that this statutory reading creates no last-antecedent problem. The "that is owned by" phrase could not possibly apply to the "operating interest" antecedent because the list of parties that follows includes only those who do not own operating interests and expressly excludes those who do-lessees. La. Rev. Stat. § 9:4863(C)(1). Rather, the most natural reading of the sentence is that the list of enumerated parties are the owners of "that part of hydrocarbons produced" from an "operating interest" that is itself owned by a lessee. Id. ; see also Barnhart , 540 U.S. at 26, 124 S.Ct. 376 (explaining that the last-antecedent canon is "not an absolute and can assuredly be overcome by other indicia of meaning").

Even apart from all of LOWLA's idiosyncrasies, classifying a purchase of hydrocarbon production as a purchase of hydrocarbons does not strike us as a distortion of common English usage. If, for instance, a farmer sold to his neighbor a share of next fall's yet-to-be-planted corn crop, would not the ordinary person characterize the neighbor as a "purchaser of corn"? This case is no different.