# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

——————

No. 18-40557

——————

United States Court of Appeals
Fifth Circuit

**FILED**

February 27, 2020

Lyle W. Cayce
Clerk

In the Matter Of:

SHERWIN ALUMINA COMPANY, L.L.C.;
SHERWIN PIPELINE, INC.,

     Debtors

-----------------------------------------------------------

PORT OF CORPUS CHRISTI AUTHORITY,

     Appellant

v.

SHERWIN ALUMINA COMPANY, L.L.C.; SHERWIN PIPELINE, INC.,

     Appellees

———————————

Appeal from the United States District Court
for the Southern District of Texas

———————————

ON PETITION FOR REHEARING AND REHEARING EN BANC

Before HIGGINBOTHAM, SMITH, and HIGGINSON, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The petitions for panel rehearing and rehearing en banc are denied. This opinion is substituted in place of the prior opinion, *In re Sherwin Alumina Co., L.L.C.*, 932 F.3d 404 (5th Cir. 2019).

No. 18-40557

A bankruptcy sale extinguished an easement of the Port of Corpus Christi Authority, an arm of the State of Texas. The Port initiated an adversary proceeding against the debtors, Sherwin Alumina Company and Sherwin Pipeline Incorporated, seeking to invalidate the sale and regain its easement. The bankruptcy court rejected the Port's sovereign immunity and fraud claims, and the district court affirmed. On appeal from the district court, we find no Eleventh Amendment violation or basis for a claim of fraud under 11 U.S.C. Section 1144. We affirm.  Our holdings should not be regarded as a disposition of the due process claim that remains pending below.

## I.

In 1998, the Port of Corpus Christi Authority purchased an 1,100 acre parcel near Corpus Christi Bay in San Patricio County, Texas, adjacent to land owned by the Sherwin Alumina Company, together with an easement granting use and access to a private roadway on the Company's land known as La Quinta Road. Fifteen years later, in 2013, the Port and Sherwin Alumina Company agreed to modify the easement, giving the Port permanent non-exclusive access along a specific portion of the road and across an adjoining drainage ditch.[1] The easement provided the primary means of commercial access to the Port's parcel.

Three years later, on January 11, 2016, Sherwin Alumina Company and Sherwin Pipeline Incorporated (collectively "Sherwin") filed voluntary petitions for Chapter 11 relief in the Bankruptcy Court for the Southern District of Texas. Sherwin also filed an initial Joint Plan for reorganization, proposing in relevant part to sell real property in the bankruptcy estate "free and clear of all Liens, Claims, charges and other encumbrances" under Section 363(f) of the Bankruptcy Code.

---

[1] In 2015, the Port released broader rights it held from the unmodified pre-2013 easement.

2

The bankruptcy court approved bidding procedures. The Port bid for a part of the bankruptcy estate, a port facility that did not include the La Quinta Road parcel. The Port conditioned its bid on "an access easement . . . over Seller's private roadway known as La Quinta Road . . . if Buyer has been unable to obtain such an easement before the Closing." On April 21, 2016, the Port and other bidders participated in an auction from which Corpus Christi Alumina emerged as the successful bidder.

In the following months Sherwin filed modified plans and associated purchase agreements in which encumbrances other than those deemed "permitted" would be stripped off the estate's property in the proposed sale, as authorized under Section 363(f) of the Bankruptcy Code. Permitted encumbrances would be defined in a future proposed confirmation order. None of these documents suggested that the Port's easement would be a permitted encumbrance.

Sherwin filed a final proposed confirmation order in the early hours of February 17, 2017, the day of the confirmation hearing. As with previous filings, the proposed confirmation order provided that the buyer would receive the property free and clear of all encumbrances, subject to a limited exception for permitted encumbrances. In the proposed order, Sherwin defined permitted encumbrances to encompass a number of specific servitudes—not including the Port's easement—as well as "easements or encumbrances . . . recorded prior to July 1, 2009." The definition was not redlined or otherwise identified as a modification. The Port was served with the proposed confirmation order. Later that day, the bankruptcy court held a hearing on the proposed plan and confirmation order, which the Port "attended" telephonically. During the hearing, Sherwin's counsel stated that the proposed order submitted earlier that day included "extensive modifications," but that Sherwin "d[id]n't believe that they are material in any real way." The court entered the order without

objection, confirming Sherwin's modified Plan. The Plan went into effect on February 27, 2017, on which date Sherwin sold its real property to Corpus Christi Alumina. On March 3, 2017, the Confirmation Order became final and non-appealable.

On March 31, 2017, Corpus Christi Alumina sold the land encompassing La Quinta Road to Cheniere Land Holdings LLC. Cheniere notified the Port that its easement had been extinguished by the sale of the land. As the time to appeal the confirmation order had expired, the Port filed an adversary complaint with the bankruptcy court, collaterally attacking the confirmation order as having been procured by fraud, barred by the state's sovereign immunity, and a denial of due process for want of notice. The bankruptcy court dismissed the claims of fraud and sovereign immunity without leave to amend but denied dismissal of the due process claim. The Port appealed the dismissals and denial of leave to amend to the district court, which affirmed. This appeal followed.

## II.

## A.

We have jurisdiction to hear the appeal of the district court's dismissals of the Eleventh Amendment and fraud claims.[2] We review cases originating in bankruptcy "perform[ing] the same function, as did the district court: [f]act findings of the bankruptcy court are reviewed under a clearly erroneous standard and issues of law are reviewed de novo."[3] At this stage, we take the well-pleaded facts as true, viewing them in a light most favorable to the plaintiff.[4] We review the denial of leave to amend for abuse of discretion.[5]

---

[2] *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 143–44 (1993); 28 U.S.C. § 158(d)(1).

[3] *In re Soileau*, 488 F.3d 302, 305 (5th Cir. 2007) (quoting *Nationwide Mut. Ins. Co. v. Berryman Prods.*, 159 F.3d 941, 943 (5th Cir. 1998) (emphasis omitted)).

[4] *Matter of ATP Oil & Gas Corp.*, 888 F.3d 122, 125–26 (5th Cir. 2018).

[5] *Lewis v. Fresne*, 252 F.3d 352, 356 (5th Cir. 2010).

## B.

Under the Eleventh Amendment, federal courts lack jurisdiction over "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State,"[6] or the state's own citizens.[7] "States, nonetheless, may still be bound by some judicial actions without their consent,"[8] including a bankruptcy proceeding. Congress has the power to establish "uniform Laws on the subject of Bankruptcies throughout the United States."[9] The Supreme Court has read the Clause "to authorize limited subordination of state sovereign immunity in the bankruptcy arena."[10]

In *Tennessee Student Assistance Corporation v. Hood*, the Supreme Court held that a bankruptcy court's discharge of an individual's debt to the state of Tennessee did not violate the Eleventh Amendment. Debtor Pamela Hood's educational debts were guaranteed by and later assigned to the state of Tennessee.[11] When Hood filed for bankruptcy and sought to have this debt discharged in an adversary proceeding, Tennessee protested that it did not consent to the proceeding, and that the bankruptcy court's discharge would violate the Eleventh Amendment.[12] The Supreme Court disagreed. It found that the discharge proceeding was an exercise of the bankruptcy court's *in rem* jurisdiction over the debtor's estate; the debtor sought no affirmative relief against the state, and the proceeding did not subject the state to any coercive

---

[6] U.S. CONST. amend. XI.

[7] *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 446 (2004) (citing *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)).

[8] *Id.*

[9] U.S. CONST. art. I, § 8, cl. 4.

[10] *Cent. Virginia Cmty. Coll. v. Katz*, 546 U.S. 356, 363 (2006).

[11] *Hood*, 541 U.S. at 444.

[12] *Id.* at 445.

judicial process.[13] The federal court's disposition of a bankruptcy estate within which a state has interests, where the proceeding is principally *in rem* and avoids coercive judicial process against the state,[14] does not implicate, let alone violate, the Eleventh Amendment.[15]

Under Texas law, the Port's easement is a non-possessory property interest in Sherwin's land.[16] That the servient land was within the bankruptcy estate is not disputed. Exercising jurisdiction over the Sherwin estate, and thus the servient land, the bankruptcy court approved a Section 363(f) sale "free and clear" of encumbrances, including the Port's La Quinta Road easement. The bankruptcy court did not award affirmative relief nor deploy coercive judicial process against the Port—it did not exercise *in personam* jurisdiction over the state.[17]

The Port argues that even if the encumbered land was within the court's jurisdiction, the La Quinta Road easement was its property, and not part of the bankruptcy estate, such that exercise of the bankruptcy court's *in rem*

---

[13] *Id.* at 450; *In re Soileau*, 488 F.3d at 307 ("[A]n *in rem* bankruptcy proceeding brought merely to obtain the discharge a debt or debts by determining the rights of various creditors in a debtor's estate—such as is brought here—in no way infringes the sovereignty of a state as a creditor.").

[14] *Hood*, 541 U.S. at 446 (analogizing to "*in rem* admiralty actions when the State is not in possession of the property").

[15] *Id.* at 451. *Hood* is consistent with the previous holdings of this court. In a pre-*Hood* case, *Texas v. Walker*, we similarly held that a bankruptcy court's discharge of a debt owed to the State of Texas was not a suit against the state, and therefore did not violate the Eleventh Amendment. 142 F.3d 813, 822 (5th Cir. 1998) ("Walker's entitlement to assert his discharge against the state's claims invoked no Eleventh Amendment consequences. The state never was hauled into federal court against its will in the bankruptcy.").

[16] *Barnhill v. Johnson*, 503 U.S. 393, 398 (1992) ("In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law."). The Port points to Texas law under which an easement is compensable if condemned under the State's eminent domain power. *City of Houston v. Northwood Mun. Util. Dist. No. 1*, 73 S.W.3d 304, 310 (Tex. App. 2001); *Houston Lighting & Power Co. v. State,* 925 S.W.2d 312, 314 (Tex. App. 1996).

[17] *Hood*, 541 U.S. at 453 ("The issuance of process, nonetheless, is normally an indignity to the sovereignty of a State because its purpose is to establish personal jurisdiction over the State.").

jurisdiction could not reach the easement. *Hood* instructs otherwise. For purposes of the Eleventh Amendment, the Port's easement is like Tennessee's debt claim against Pamela Hood's estate: the state holds an interest burdening the bankruptcy *res*. *Hood* holds that a bankruptcy court's exercise of *in rem* jurisdiction over the debtor's estate can extinguish the state's interest burdening that *res* without implicating the Eleventh Amendment.

Of course, there remain statutory restrictions on the extinguishment of third parties' interests in bankruptcy-estate property. Section 363(f) of the Bankruptcy Code provides that the court may sell property in the bankruptcy *res* free and clear of others' interests, but only under certain limited circumstances.[18] The Port argues that none of those circumstances was met in the sale of the easement. However, this argument is foreclosed. As the Port concedes, any Section 363(f) objection had to have been raised on direct appeal of the confirmation order and cannot be raised in this collateral adversary proceeding. We affirm the dismissal of the Port's Eleventh Amendment claim.

## C.

Under Section 1144 of the Bankruptcy Code, "[o]n request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud."[19] The elements of a claim for fraud are (1) that the debtor or proponent made a materially false representation or omission to the court; (2) that the representation was made with knowledge of its falsity or reckless disregard for the truth; (3) that the

---

[18] Those circumstances are that "(1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) [the] entity [with the interest in the property] consents; (3) [the entity's] interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f).

[19] 11 U.S.C. § 1144.

representation was made to induce the court's reliance; (4) that the court actually relied upon the representation; and (5) the court entered the confirmation order in reliance on the representation.[20] A claim for fraud in an adversary proceeding must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).[21] Under Rule 9(b) "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[22]

We need not proceed beyond the first element, because the Port fails to allege any intentional false representation. During the confirmation hearing, Sherwin's counsel described last-minute changes to the proposed order as "extensive modifications" that were not "material in any real way." The Port contends this was a misrepresentation because Sherwin's last-minute changes "[f]or the first time . . . attempt[ed] to directly impact the Port's easement property rights"—in other words, the modifications sprang a trap on the Port, isolating its easement for extinguishment, a material change that should have been announced as such to the bankruptcy court. But Sherwin's last-minute modifications to the proposed confirmation order had no such effect on the Port's easement. The Port's allegation that Sherwin's last-minute changes for the first time "stripp[ed] third party easement property rights" from its land is inaccurate. From Sherwin's initial bankruptcy filing, more than a year before the confirmation hearing, the debtor proposed a sale in which "all property of

---

[20] *In re Davis Petroleum Corp.*, 385 B.R. 892, 912 (Bankr. S.D. Tex. 2008).

[21] FED. R. BANKR. P. 7009; *In re Fornesa*, 2016 WL 2930459, at *3 (Bankr. S.D. Tex. May 13, 2016) ("Rule 9(b), Fed. R. Civ. P., as made applicable by Bankruptcy Rule 7009, requires that fraud be pled with particularity. The particularity requirement requires that the pleading identify who, what, when, where, and how the alleged fraud was committed.").

[22] FED. R. CIV. P. 9(b); *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) ("At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where, and how of the alleged fraud." (internal quotation marks and citation omitted)).

the Estates to be acquired by the Buyer . . . shall vest in the Buyer, free and clear of all Liens, Claims, charges, and other encumbrances."

Under Texas law, an easement is a type of encumbrance.[23] From the beginning, by the general terms of Sherwin's proposed sale, the debtor proposed a Section 363(f) sale that would extinguish the Port's easement. The Port's actions indicate that it so understood the proposed sale: in its unsuccessful bid for certain estate lands it also sought to preserve the La Quinta Road easement, on the implicit understanding that, absent agreement providing otherwise, its La Quinta Road easement would be extinguished under the terms of the sale.

Sherwin's last-minute modifications to the plan carved out exceptions to encumbrances on the estate lands to be extinguished in the sale, preserving a number of other encumbrances, including those recorded before July 2009. Debtors' counsel's description of the changes as not "material in any real way" was not misleading because they were not changes at all with respect to the Port's easement. They did not affect the La Quinta Road easement, which remained subject to the same general rule that it would be stripped in the Section 363(f) sale as a "encumbrance" on the servient estate land. The Port's situation remained unchanged by the last-minute modifications. The Port does not allege the first element of fraud. We affirm the dismissal of the Port's fraud claim. This conclusion does not undermine the Port's ongoing claim of a denial of due process.

---

[23] *City of Beaumont v. Moore*, 146 Tex. 46, 55 (1947) (defining an "encumbrance" as a "burden on land, depreciative of its value, such as a lien, easement or servitude").

No. 18-40557

## D.

A court should grant leave to amend freely when justice so requires.[24] It follows that where amendment would be futile, the court need not grant the plaintiff leave to amend.[25]

Here, the bankruptcy court dismissed the Port's fraud claim with prejudice,[26] finding "[i]t would be futile to allow an amendment to the Complaint because there are no facts that could be plead[ed] to support" the claim. This determination was no abuse of discretion. The Port's fraud claim is premised on an alleged misrepresentation made by Sherwin's counsel regarding modifications. The bankruptcy court determined the Port could plead no additional fact to salvage this claim. The district court did not abuse its discretion in denying the Port leave to amend.

## III.

We AFFIRM the dismissals of the Port's Eleventh Amendment and fraud claims, and the denial of leave to amend the complaint.

---

[24] FED. R. CIV. P. 15(a).

[25] *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998).

[26] The Port's arguments are restricted to the issue of whether it was entitled to amend its § 1144 fraud claim.

10

No. 18-40557

EDITH H. JONES, Circuit Judge, joined by OWEN, Chief Judge, and ELROD, WILLETT, HO, DUNCAN, ENGELHARDT, and OLDHAM, Circuit Judges, dissenting from denial of *en banc* reconsideration:

The panel opinion gives the misleading impression that this is just another example of a bankruptcy claimant's having missed a deadline, argued the wrong issues (Eleventh Amendment immunity and 11 U.S.C. § 1144 fraud in inducement of the plan), and lost its chance at sharing in the debtor's estate.  Still, the panel notes that a due process claim asserted by the Port of Corpus Christi Authority remains pending in the bankruptcy court.  Moreover, the panel claims not to have placed a thumb on the scale of adjudicating that claim.   Because half of the active judges disagree with the panel's dismissive attitude toward the due process claim, this decision was nearly vacated for en banc reconsideration.

I write to clarify the stakes at issue.  An easement is a real property interest protected by Texas law,[1] the Bankruptcy Code[2], and the Constitution.[3] It cannot be "stripped" in bankruptcy court, if at all, without compensation or compliance with finely balanced statutory procedures.  What occurred in the bankruptcy court, according to the Port's pleadings, raises troubling due process questions.

The Port has maintained a road easement for decades over the debtor's parcel that is the Port's sole access to its own property.  For the first time, as

---

[1] *See generally Marcus Cable Assocs. L.P. v. Krohn,* 90 S.W.3d 697, 700 (Tex. 2002); *Redburn v. City of Victoria,* 898 F.3d 486, 495 (5th Cir. 2018) ("Because the easement holder is the dominant estate owner and the land burdened by the easement is the servient estate, the property owner may not interfere with the easement holder's right to use the servient estate for the purposes of the easement." (quoting *Marcus Cable,* 90 S.W.3d at 721)); *Rahmati v. AJBJK, L.L.P.*, No. 01–15–01936–CV, 2017 WL 4820336, at *4–5 (Tex. App.—Houston [1st Dist.] 2017, no pet.) ("[T]he transfer [of title to the servient estate] automatically passes all easements attached to the property, even if not expressly referenced in the instrument of transfer." (citing *Shelton v. Kalbow*, 489 S.W.3d 32, 46 & n.11 (Tex. App.—Houston [14th Dist.] 2016, pet. denied)).

[2] 11 U.S.C. § 363(f).

[3] *See fn.* 7, *infra.*

far as research has uncovered, the bankruptcy court's confirmation order stripped the Port's easement, a "dominant estate" in the debtor's real property, without payment of any kind, without the Port's consent, and without otherwise satisfying the conditions of 11 U.S.C. § 363(f) for sales "free and clear" of "interests" in a debtor's property.[4]  The bankruptcy court was not squarely informed of this dispossession, and the Port asserts that it did not learn about it in time to object to the confirmation.  In fact, when the bankruptcy court dismissed the counts of the Port's adversary proceeding that are decided by the panel in this appeal, the court refused to dismiss the Port's due process claim, telling the parties,

> I'm looking at a pleading.  I have somebody who says, not only did I not know, I couldn't have known, practically….[T]hat's,  effectively,  the  [Port's] argument:  you gave me 300 pages, you hid a sentence and I couldn't possibly have been expected to have found it and understood its implications…I do think there has been an awful lot of confusion with using defined terms inappropriately.  That's something we'll ferret out.

Contrary to the bankruptcy court's wholesome openmindedness, the panel opinion repeatedly implies that the Port could have/should have known the debtor's intentions to "extinguish" its easement, which the debtor allegedly swept  into  its  documentation  under  the  generic  term "encumbrance."  Although the facts have not been fully vetted, the Port's pleadings suggest quite a different story.  No less than ten lengthy draft documents required for a proposed sale of the debtor's property were filed in

---

[4] As the panel opinion notes, the Port contends that none of these conditions was fulfilled.  Sherwin hardly disputes this, on the sole basis that the Port "waived" compliance with Section 363(f) by failing to object to the plan.

the bankruptcy court over a period of months.[5] Several of these described "Acquired Real Property" as including Easements, "other than the Excluded Properties." Excluded Assets, the debtor represented, was an undefined category that would be identified in a later schedule. The panel opinion states that "[n]one of these [transactional documents] suggested that the Port's easement would be a permitted encumbrance," i.e., an interest that would run with the land in an eventual sale. More precisely, however, never prior to the eve of confirmation was the schedule supplied, nor did any of the transactional documents reference the Port's easement directly or indirectly.

After midnight preceding the confirmation hearing, the debtor filed a proposed 334-page confirmation order. At paragraph 108, the debtor at last defined "permitted encumbrances" to include a number of specific servitudes as well as "easements or encumbrances…recorded prior to July 1, 2009." This vague definition excluded the Port's easement, and only that easement, from "encumbrances" that would survive the sale of the debtor's real property. As the panel opinion acknowledges, this definition was neither highlighted nor otherwise identified, and the debtor's counsel represented in court the next day that he did not believe any material modifications had been made to the plan of reorganization. But the panel opinion says the Port is "inaccurate" "to allege that Sherwin's last-minute changes for the first time 'stripp[ed] third party easement property rights" from its land.

The record before us casts serious doubt on the panel's characterizations. Tellingly, during the hearing on the motion to dismiss, the debtor's counsel disavowed that any references to "acquired easements" and "excluded easements" in the transactional documents included the Port's

---

[5] It is unnecessary here to recite the shifting terminology and references used in amended plans of reorganization, disclosure statements, and modified asset purchase agreements submitted to the court before the final documents on the eve of confirmation.

easement.  She explained that, "we can't sell the Port's easement.  We don't own the Port's easement."[6]  This concession heightens the imperative for the debtor's plan to have complied with Section 363(f), which limits a debtor's right to sell free and clear of others' interests in property.  *See In re Energytec,* 739 F.3d 215, 221-25 (5th Cir. 2013) (gas pipeline transportation fee, a covenant running with the land under Texas law, could be extinguished only in compliance with terms of Section 363(f)(5)); *see also Gouveia v. Tazbir,* 137 F.3d 295 (7th Cir. 1994) (although a property subject to covenants running with the land might be sold under Section 363(f)(5), the fact that state law did not ordinarily allow such covenants to be forcibly monetized meant that the covenants could not be expunged in bankruptcy).[7]  Likewise, to confirm its plan, the debtor had to prove to the court that it had complied with all applicable law.  11 U.S.C. § 1129(a)(1), (3).

---

[6] This statement is rendered even more confusing as counsel averred during the same hearing two other propositions:  that the term "encumbrances" under Texas law includes easements, placing the Port on notice; and also that the transactional documents' definition of "liens" included easements.  The first term has some purchase in Texas law because the generic term "encumbrance" includes easements and many other "interests" in real property.  The second statement states a legally counterintuitive, if not simply incoherent, proposition from the standpoint of giving an easement holder notice.

[7] *See generally, Louisville Bank v. Radford,* 295 U.S. 555, 601-02 (1935) (federal law may not take without compensation, and give to another, "rights in specific property which are of substantial value") (Brandeis, J.).  Citing the few cases found in this area, commentators agree that easements may not be expunged in bankruptcy absent strict compliance with Section 363(f).  *See, e.g., You Can't Buy Me Love and You Can't Buy a 363(f) Order*, Weil Bankruptcy Blog (July 27, 2017) ("Practitioners should take note and make absolutely certain that they can satisfy at least one of the conditions of 363(f)(1)–(5) because courts will likely not tolerate any 363(f) deficiencies, regardless of how good a deal it represents for the estate."); Gregory G. Hesse & Cameron W. Kinvig, *How Problem Easements Can Limit Sale Rights*, 33 Am. Bankr. Inst. L.J. 32, 33 (May 1, 2014) ("[M]any courts have shown a willingness to maintain covenants and other rights that run with the land in a § 363(f)(1) sale context, unless a party can demonstrate a specific state or federal law provision that mandates that they be released."); Lisa H. Fenning & Rosa Evergreen, *Yet Another Exception to 363(f): Covenants Running with the Land*, *in* § 363 Sales: What You Get – and What You Are Stuck With 46, 47 (Commercial Law League of America, Oct. 9, 2014) (citing, *inter alia*, *In re Energytec*, 739 F.3d 215).

No. 18-40557

Whether the evolving terms of the transactional documents (a) informed the Port sufficiently that its easement could be put at risk and (b) yielded sufficient opportunity to be heard at the confirmation hearing raises troubling and important due process issues to be resolved in the bankruptcy court.

For these reasons, I respectfully dissent.